David RUNKLE, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, Defendant.

Case No. 12–61247–CIV.

United States District Court,
S.D. Florida.

Nov. 16, 2012.

Yechezkel Rodal, Loan Lawyers, LLC, Plantation, FL, for Plaintiff.

John Robert Chiles, Nicholas Steven Agnello, Burr & Forman, LLP, Ft. Lauderdale, FL, Christine Irwin Parrish, Burr & Forman LLP, Orlando, FL, for Defendant.

### ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss [DE 18], filed August 10, 2012. The Court has carefully considered the Motion, Plaintiff's Response in Opposition [DE 19], and Defendant's Notice of Supplemental Authority [DE 20], and is otherwise fully advised in the premises. Defendant did not file a formal reply and the deadline for doing so has passed.

### STANDARD OF REVIEW

When a defendant files a motion to dismiss for failure to state a claim, all of the complaint's plausible, nonconclusory allegations are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court makes all reasonable inferences from those allegation in the plaintiff's favor. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n. 2 (11th Cir.2001). Together, the pled facts and the reasonable inferences they support must give rise to a plausible claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Without making any findings of fact, the Court will now set forth Plaintiff's nonconclusory factual allegations, assumed to be true for the purposes of this Order.

### ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff David Runkle ("Runkle") sued Defendant Federal National Mortgage Association ("Fannie Mae") for violating the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* Runkle had a mortgage on his primary residence. The mortgage had been assigned to Fannie Mae. Fannie Mae, as assignee, contracted with Seterus, Inc. to service the loan. Runkle provided factual allegations to show that the nature of his mortgage, the assignment to Fannie Mae, and the contract with Seterus brought Runkle's dealings with Fannie Mae and Seterus within the purview of TILA.

Fannie Mae initiated foreclosure proceedings against Runkle's home. Runkle had been trying to get a loan modification but had been given the runaround from everyone he dealt with. Apparently, the foreclosure action was the last straw, because he became "determined to find out who actually owned his loan in order to get a straight answer as to the modification." [DE 13 at 4]. Also, it was not clear to Runkle that Fannie Mae had standing to foreclose on his house. He decided to get

answers to his questions by sending a written request to Seterus to identify the owner of his loan.

Seterus received a written request on or about August 18, 2011. The request asked Seterus to identify the owner or master servicer of Runkle's promissory note. Seterus replied on September 6, 2011. Its response identified Seterus as the "servicer" of the loan and Fannie Mae as the owner, but did not provide Fannie Mae's address and telephone number. Runkle claims that Seterus' response violated TILA § 1641(f)(2), which provides in relevant part,

> Under written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address and telephone number of the owner of the obligation or the master servicer of the obligation.

Seterus did not explicitly identify itself as the "master servicer." Instead, Seterus explained that it was "servicing" Runkle's loan and that Fannie Mae had "contracted with Seterus to collect payments and respond to inquiries regarding the loan." [DE 13–2]. Runkle believes that Seterus' response was insufficient. He claims that Seterus' violation of TILA is apparent from the face of its response, so TILA liability attaches, for which liability Fannie Mae is responsible.

Runkle's second cause of action arises due to Seterus' failure to provide a payoff statement. Runkle's written request asked Seterus to provide Runkle with "[a]n itemized statement of the full amount needed to reinstate the mortgage as of the date of [Seterus'] response along with an itemized payoff statement. [DE 13–1 ¶ 8]. Applying a portion of what is known as Regulation Z, 12 C.F.R. § 226.36(c)(1)(iii), Runkle claims that Seterus was obligated to provide Runkle with "an accurate statement of the total outstanding balance that would be required to satisfy [Runkle's]

obligation in full as of a specified date." Because Seterus did not provide that statement, Runkle alleges that Seterus violated 15 U.S.C. § 1639(l)(2), the portion of TILA authorizing § 226.36(c)(1)(iii).

## DISCUSSION

### A. Count I: 15 U.S.C. § 1641(f)(2)

Fannie Mae claims that it was merely an assignee of a loan and therefore cannot be liable for its servicer's § 1641(f)(2) violations. Alternatively, it argues that Seterus did not violate § 1641(f)(2). As discussed in Part B, the Court finds that assignees can indeed be liable for servicer violations based in part on the reasoning of *Khan v. Bank of New York Mellon,* 849 F.Supp.2d 1377 (S.D.Fla.2012). The Court need not reach that issue to resolve Count I, however, because Seterus did not violate § 1641(f)(2).

■ There is no debate that Seterus failed to give the contact information for Fannie Mae when it responded to Runkle's request. However, Runkle asked for either the owner or master servicer's information. [DE 13–1 ¶ 6]. Seterus informed Runkle that it was "servicing" Runkle's loan and that Fannie Mae had "contracted with Seterus to collect payments and respond to inquiries regarding the loan." All of Seterus' contact information was included on Seterus' letter.

■ Fannie Mae argues that there is no requirement to use "magic language" under TILA. TILA is grounded on the notion that consumers should receive "meaningful disclosure" of credit issues. *Hauk v. JP Morgan Chase Bank USA,* 552 F.3d 1114, 1118 (9th Cir.2009). TILA therefore allows for some flexibility and does not always require "magic words." *See Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525, 531 (7th Cir.2007). *But see Grant v. Imperial Motors,* 539 F.2d 506,

510 (5th Cir.1976) ("Once a court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability."). Fannie Mae asserts that Seterus did a good enough job disclosing that Seterus was the master servicer, so there should be no § 1641(f)(2) liability.

Whether Fannie Mae is right depends on what a "master servicer" is. TILA defines "servicer" by reference to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(i)(2). *See* 15 U.S.C. § 1641(f)(3). Though TILA offers no definition of "master servicer," a definition of that term is found in the RESPA regulations. According to those regulations, a "master servicer" is "the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21(a). A subservicer, in turn, is "a servicer who does not own the right to perform servicing, but who does so on behalf of the master servicer." *Id.*

Seterus's disclosure told Runkle that Fannie Mae had "contracted with Seterus to collect payments and respond to inquiries regarding the loan." [DE 13–2]. Because Fannie Mae directly contracted with Seterus to service the loan, Seterus was telling Runkle that it was the master servicer without using those exact words. Seterus described the master servicer relationship, which could possibly be more helpful than simply using a legal term of art. Runkle could have deduced that Seterus was the master servicer because there was a direct contract between the assignee of the loan and the servicer. As a result, Seterus could not have been a "subservicer" that was acting on behalf of some undisclosed master servicer. The contract would have had to have been between a master servicer and Seterus if

Seterus was a subservicer. Instead, Seterus told Runkle that there was a direct servicing contract with the assignee. Because Seterus conveyed to Runkle that it was the master servicer of the loan and provided all of the necessary contact information, Seterus did not violate § 1641(f)(2). Runkle fails to state a claim for a § 1641(f)(2) violation.

The Court is aware that at least two other courts have disagreed. In *Stephenson v. Chase Home Fin. LLC,* No. 10cv2639, 2011 WL 2006117 (S.D.Cal. May 23, 2011), a debtor made a similar request to the one at issue in this case but the servicer did not provide all of the necessary contact information. *Id.* at *2. The servicer only told the debtor that it was servicing the loan. *Id.* Noting that there was a difference between a master servicer and a servicer, the court found the servicer's statement that it was a servicer insufficient. *Id.* at *3. Construing the ambiguous response against the servicer, the court found that the debtor had stated a claim. *Id.* Another court reached much the same result under similar facts. *In re Meyer,* 379 B.R. 529, 552–52 (Bankr. E.D.Pa.2007).

Both of these cases are factually distinguishable from the allegations confronting this Court. In *Stephenson* and *In re Meyer,* the servicer provided no additional information from which the debtor could reach a conclusion on the servicer's status. Seterus, on the other hand, explained to Runkle the nature of Seterus' relationship with the owner of Runkle's obligation. That explanation foreclosed other possible roles Seterus could have been playing, such as subservicer. There is no ambiguity, so Runkle's case is distinguishable.[1]

---

1. The Court's holding in Runkle's case is a limited one. Had Seterus' explanation not demonstrated that it was the master servicer, then the Court's conclusion may have been different.

Fannie Mae's motion to dismiss Count I of the Complaint will be granted with prejudice.

### B. Failure to Provide Payoff Amount Pursuant to 12 C.F.R. 226.36(c)(1)(iii)

#### 1. Did Seterus Violate Regulation Z?

■ There is a debate whether Runkle has the right to sue for Regulation Z violations and whether Fannie Mae would be responsible for Seterus' violation. Because neither of these issues matter if Seterus did not violate Regulation Z, the Court will first resolve whether Seterus violated Regulation Z by not providing a payoff statement.

Fannie Mae argues that Runkle failed to properly request a payoff statement so Seterus had no duty to respond. Regulation Z, 12 C.F.R. 226.36(c)(1)(iii), allows a debtor to request "an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date." Runkle asked for "[a]n itemized statement of the full amount needed to reinstate the mortgage as of the date of your response along with an itemized pay-off statement." [DE 13–1 at 2 ¶ 8]. Runkle did not cite § 226.36(c) in his request. Fannie Mae argues that there is no way Seterus could have known that what Runkle wanted was "an accurate statement of the total outstanding balance," nor could it have known the specific date for such a statement. In addition, because Runkle asked for information beyond the scope of what is provided in § 226.36(c), Fannie Mae argues that the entire request is invalid.

■ The Court disagrees. Fannie Mae appears to be resorting to a "magic words" argument. As discussed above, magic words are not always necessary. TILA is a consumer protection statute. It should be construed liberally to serve Congress's

intent. *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998). Presumably Congress intended TILA to help all consumers, not just consumers with lawyers who can carefully craft requests for information.[2] Runkle asked for a payoff statement, albeit inartfully, and his sentence included a reference to the date at which Seterus would respond, though somewhat ambiguous. Nevertheless, the Court finds that the request is sufficient to create a response obligation for Seterus.

#### 2. Is There a Private Cause of Action for this Violation of Regulation Z?

It takes some statutory and regulatory unraveling to uncover Runkle's potential cause of action. TILA authorized Regulation Z, codified at 12 C.F.R. § 226.36, which is entitled "Prohibited acts or practices in connection with credit secured by a dwelling." *See* 15 U.S.C. § 1604(a) ("The Bureau shall prescribe regulations to carry out the purposes of this subchapter."). Section 226.36(c)(1)(iii), created under TILA's authority, forces the servicer to inform the debtor of the total outstanding balance necessary to pay off the obligation as of a certain, specified date. Runkle had a right to request an accurate statement of the total outstanding balance on a specified date and Seterus had an obligation to respond.

Runkle then seats his cause of action in 15 U.S.C. § 1639(*l*)(2). That portion of TILA reads, "The Bureau, by regulation or order, shall prohibit acts or practices in connection with mortgage loans that the Bureau finds to be unfair, deceptive or designed to evade the provisions of this section." Violations of § 226.36(c) have been found to be unfair. *See* 73 Fed.Reg. 44522, 44570 (July 30, 2008) ("[T]he Board finds the acts and practices prohibited un-

---

**2.** The Court notes that in this case, Runkle's   request was drafted by a lawyer.

der § 226.36(c) for closed-end consumer credit transactions secured by a consumer's principal dwelling to be unfair.").

Whether connecting the dots between § 226.36 to § 1639(*l*)(2) sketches a viable cause of action has been ˙ questioned. Some courts have been skeptical of § 226.36(c) claims. Judge Ryskamp found that a claim should be dismissed for failing to show that the plaintiff's mortgage was within the ambit of § 1639, which he believed only concerned high cost mortgages. *Montano v. Wells Fargo Bank, N.A.*, No. 12–80718, 2012 WL 5233653, at *6 (S.D.Fla. Oct. 23, 2012). *But see Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F.Supp.2d 151, 167–68 (D.D.C.2011) (rejecting the argument that § 1639 only applied to high cost mortgages). Judge Ungaro was unconvinced that there was a private right of action to enforce Regulation Z. *Kievman v. Fed. National Mortg. Ass'n*, 901 F.Supp.2d 1348, No. 12–cv–22315, 2012 WL 5378036 (S.D.Fla. Sept. 14, 2012).

█ Notwithstanding these doubts, this Court finds that a TILA plaintiff can sue for violations of § 226.36(c). TILA Section 1640, entitled Civil Liability, states that "any creditor who fails to comply with *any* requirement imposed under this part" is liable. 15 U.S.C. § 1640(a) (emphasis added). The heading of that subsection states that its content addresses "individual or class action for damages." Section 1639 is a part of TILA. Section 1639(*l*)(2) allows the Bureau to prohibit acts and practices that are unfair, and failing to provide a payoff statement is unfair. Because the Bureau has prohibited the refusal to provide a payoff statement, it has imposed a requirement, and therefore a creditor can be liable for failing to comply with that requirement. As a result, the Court finds that a violation of 15 U.S.C. § 1639(*l*)(2) can be brought as a private cause of action.

### 3. Can Fannie Mae Be Liable for Its Servicer's Violation of Regulation Z?

█ The next question is whether Fannie Mae can be held liable under this cause of action. Fannie Mae claims that it is merely an assignee of a loan and therefore cannot be liable for its servicer's TILA violations. In order to address this argument, the Court must begin by addressing the precedent for vicarious liability.

When confronted with the question of whether a *creditor* was liable for its servicer's *§ 1641(f)(2)* violation, this Court found that such liability could attach. *Khan v. Bank of New York Mellon*, 849 F.Supp.2d 1377 (S.D.Fla.2012). In *Khan*, the servicer failed to identify the telephone number of the owner or master servicer of the plaintiff's loan obligation. *Id.* at 1378. The creditor argued that it could not be liable for its servicer's § 1641(f)(2) violation. *Id.* The Court began by noting that TILA did not impose liability on servicers, but rather only on creditors and their assignees. *Id.* at 1378–79. However, TILA had recently been amended to explicitly allow a suit against creditors for violation of § 1641(f)(2). *Id.* at 1380. The Court construed § 1641(f)(2) to allow the creditor to be liable for the servicer's acts. *Id.* at 1382. It did so because it did not make sense for § 1640(a) to create a cause of action if § 1641(f)(2) absolved both servicers and creditors from liability. *Id.* The Court supported this conclusion by noting that TILA was a consumer protection statute that should be interpreted so as to favor consumers. *Id.* at 1380. In reaching its conclusion, the Court disagreed with a contrary case within this district. *See Holcomb v. Fed. Home Loan Mort. Corp.*, No. 10–81186, 2011 WL 5080324 (S.D.Fla. Oct. 26, 2011).

*Khan* established that a creditor can be liable for its servicer's § 1641(f)(2) viola-

tions.[3] From that base, the Court can now begin to determine whether an assignee is liable for its servicer's TILA violations and whether there is vicarious liability for § 226.36 violations. The Court will begin with the assignee question and then proceed to the § 226.36 vicarious liability question.

For this purposes of this motion, Runkle has abandoned his claim that Fannie Mae is a "creditor." Instead, Runkle is resting on the argument that Fannie Mae is an "assignee." Therefore, the question presented to this Court is whether an *assignee* is liable for its servicer's conduct. The Court concludes that the same principles behind *Khan* lead to the same conclusion for assignees.

First, TILA provides that assignees are liable just like creditors, so long as the TILA violation is "apparent on the face of the disclosure statement." § 1641(a). Setting aside the "apparent on the face" language for a moment, subsection (a) makes it apparent that assignees can be liable like creditors. Such a result makes sense. The only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation, whereas an assignee only receives the ownership of the loan without having originated the loan. *See* 15 U.S.C. §§ 1602(g), 1641(a). The type of conduct that violates TILA's informational request provisions like asking for a payoff statement, however, only arise post-origination. The distinction between originator and assignee therefore is irrelevant.

From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers. In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment. Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms. Because the relationship is the same, liability principles should be the same.

Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, *see Khan*, 849 F.Supp.2d at 1382, it similarly makes no sense to absolve the assignee of all liability. Once the assignee receives the assignment, the assignor is most likely out of the picture. If an assignee were not responsible for its servicer's conduct, no party could be liable. *Id.* There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

The wrinkle, which was set aside for a moment, is that for an assignee to be liable, the TILA violation must be "apparent on the face of the disclosure statement." § 1641(a). It is apparent from the face of Seterus' response that no payoff statement was attached. Fannie Mae argues that § 1641(a) means that an assignee can only be liable for documents created at the time of the origination of the loan (Fannie Mae's interpretation of "disclosure

---

**3.** The Court notes that some courts disagree with *Khan*. *E.g. Kievman v. Fed. National Mortg. Ass'n*, 901 F.Supp.2d 1348, No. 12–cv–22315, 2012 WL 5378036 (S.D.Fla. Sept. 14, 2012); *Holcomb v. Fed. Home Loan Mort. Corp.*, No. 10–81186, 2011 WL 5080324 (S.D.Fla. Oct. 26, 2011). The Court respects the disagreement, but remains unpersuaded.

Other courts have followed *Khan*. *E.g. Galeano v. Fed. Home Loan Mortg. Corp.*, No. 12–61174, 2012 WL 3613890 (S.D.Fla. Aug. 21, 2012); *Rinegard–Guirma v. Bank of Am. NA*, No. 3:10–cv–01065, 2012 WL 1110071, at *9 (D.Or. Apr. 2, 2012). In the absence of controlling precedent to the contrary, the Court will continue to follow *Khan*.

statements"), which documents were assigned to the assignee. If so, then an assignee would not be liable for a post-assignment TILA error. The Court must resolve whether § 1641(a) prohibits a plaintiff from placing liability on an assignee after the assignment has been completed, such as when an assignee's servicer violates TILA.

The Court does not believe that assignees are only liable for lending errors arising prior to the assignment. Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from sister district courts.

In *Rinegard–Guirma v. Bank of America NA,* No. 3:10–cv–01065, 2012 WL 1110071, at *9 (D.Or. Apr. 2, 2012), the assignee argued that § 1641(a) limited its liability for botched postassignment informational requests. The court acknowledged that "a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement, since a servicer's role only begins after disclosures are made." *Id.* at *9. The court found, however, that an interpretation of TILA that did not hold assignees liable would "conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations." *Id.* at *10. Citing *Khan,* the court noted that assignees obviously can be liable for failing to disclose information, pointing to the rule that servicers who are also assignees may be held liable for violations of § 1641(f)(2). *Id.*

Another court has also found that assignees can be vicariously liable for TILA violations. In *Consumer Solutions REO, LLC v. Hillery,* No. C–08–4357, 2010 WL 1222739, at *3 (N.D.Cal. Mar. 24, 2010), the court also recognized that information nondisclosure had nothing to do with a disclosure statement per se. That court found that the limitation in § 1641(a) did not apply when another section like § 1641(f)(2) created liability. "In other words, § 1641(a) addresses horizontal liability between predecessor and successor whereas § 1641(f)(2) addresses potential vertical liability as between agent and principal." *Id.*

Notwithstanding § 1641(a)'s limitation of assignee liability to errors apparent on the face of "disclosure statements," the Court finds that assignees can indeed be liable for their servicer's nondisclosures that violate TILA. The Court's position makes sense of Congress's attempt to allow borrowers to find the owners or master servicers of their obligation. It makes assignees, who are essentially just like creditors at the point at which a borrower is asking questions about a loan, liable for the faults of those they contract with to service their loans. This encourages proper disclosure. As have other courts before it, this Court construes the statutory language of § 1641(a) in context to find assignee vicarious liability.

## CONCLUSION

Runkle does not have a claim for a TILA violation of § 1641(f)(2). Without using the magic words "master servicer," Fannie Mae's servicer Seterus explained to Runkle that it was the master servicer and provided all of its contact information. Runkle does, however, state a claim against Fannie Mae for Seterus' refusal to provide a payoff statement. Runkle has a private cause of action against the assignee, even though he did not use magic words or citations to specific regulations in asking for a payoff amount.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 18] is **GRANTED IN PART;**

2. Count I of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE;**

3. Count II of Plaintiff's Complaint may proceed.