Wilner **GUILLAUME** et al., Plaintiffs,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al.,**
**Defendants.**

**Case No. 12–CV–80625.**

United States District Court,
S.D. Florida,
West Palm Beach Division.

March 11, 2013.

Yechezkel Rodal, Loan Lawyers, LLC, Plantation, FL, for Plaintiffs.

Tenikka Lanai Cunningham, Yoss LLP, Alan Rosenthal, Carlton Fields, P.A., Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on Defendants' motions to dismiss [**DE 23, 24**] filed on November 14, 2012. Plaintiffs filed responses [**DE 31, 32**] on December 10, 2012. Defendants filed a joint reply [**DE 34**] on December 20, 2012. A hearing was held on the matter on January 18, 2013. This motion is ripe for adjudication.

## I. Background

Plaintiffs Wilner Guillaume and Rachel Guillaume ("Plaintiffs"), husband and wife, filed this action through their counsel, Loan Lawyers, LLC ("Loan Lawyers"), against Defendants Federal National Mortgage Association ("Fannie Mae") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants") under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). Plaintiffs are borrowers whose mortgage loan obligation is owned

by Fannie Mae[1] and serviced by Wells Fargo.[2] On July 15, 2008, Wells Fargo initiated foreclosure proceedings against Plaintiffs, alleging that "as servicer for the owner and acting on behalf of the owner with authority to do so, is the present designated holder of the note and mortgage with authority to pursue the present action." Plaintiffs, represented by Loan Lawyers in that action, allege they were unsure of who owned their mortgage loan, and thus, through Loan Lawyers, sent a written request for information to Wells Fargo pursuant to TILA § 1641(f)(2) insisting that it identify the owner or master servicer of their loan. The letter was sent on June 21, 2011 and contained requests for fifteen items, including an itemized pay-off statement for the full amount needed to reinstate the mortgage. Wells Fargo responded to Loan Lawyers on July 5, 2011, providing a complete payment history of the loan and the address and contact information of its attorneys managing the foreclosure action. Wells Fargo directed Loan Lawyers to the phone numbers of its servicing representatives for any additional questions. Without any further inquiry, however, Plaintiffs filed this action on May 25, 2012 alleging Defendants failed to identify the "master servicer" of the loan required under TILA § 1642(f)(2), and that failed to provide a pay-off statement within a reasonable time in violation of Regulation Z, 12 C.F.R. § 226.36(c)(1)(iii).

Defendants now move to dismiss this action claiming, *inter alia,* that this lawsuit is a sham, and should be dismissed as such, because Plaintiffs (through Loan Lawyers) manufactured TILA claims to obtain statutory damages and attorneys' fees and gain leverage in the pending foreclosure proceedings. For the reasons discussed below, this Court agrees.

## II. Legal Standard on Motion to Dismiss

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Further, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 912 (11th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

---

1. The amended complaint alleges, and the exhibits attached demonstrate, that Fannie Mae was assigned Plaintiffs' mortgage loan, and was not the initial creditor.

2. As demonstrated in the exhibits attached to Plaintiffs' amended complaint, the mortgage loan was actually serviced by Wells Fargo

Home Mortgage ("WFHM"), an operating division of Wells Fargo. For the purpose of this action, they are one in the same, *see In re Krause,* 414 B.R. 243, 248 (Bankr.S.D.Ohio 2009), and the Court will refer to WFHM and Wells Fargo unanimously as Wells Fargo.

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III. Discussion

TILA is a consumer protection statute enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available ... and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). For certain disclosure (nondisclosure) violations, TILA creates a private cause of action. Specifically, § 1640(a) creates creditor liability for violations of § 1641(f), which provides in pertinent part:

> Upon written request *by the obligor*, the *servicer* shall provide the obligor, the best knowledge of the servicer, with the name, address, and telephone number of the *owner* of the obligation or the *master servicer* of the obligation.[3]

15 U.S.C. § 1641(f)(2) (emphasis added).[4] For other violations under TILA, it is unclear whether a private right of action exists. Particularly, courts are divided as to whether individuals may bring an action under Regulation Z, 12 C.F.R. § 226.36(c)(1)(iii) for failure to provide a pay-off statement within a reasonable time. *See Runkle*, 905 F.Supp.2d at 1330–31 (concluding there is a private right of action for violations of 12 C.F.R. § 226.36(c)(1)(iii)); *Montano*, 2012 WL 5233653 at *6 (holding 12 C.F.R. § 226.36(c)(1)(iii) only applies to high cost mortgages); *Kievman v. Fed. Nat'l Mortg. Ass'n*, 901 F.Supp.2d 1348, 1353 (S.D.Fla. 2012) (holding there is no private right of action). *See generally Danier v. Fed. Nat'l Mortg. Ass'n*, Case No. 12–cv–62354, 2013 WL 462385, at *3–4 (S.D.Fla. Feb. 7, 2013) (discussing the differing holdings of the cases above and concluding there is a private right of action for violations of 12 C.F.R. § 226.36(c)(1)(iii)).

TILA was designed to protect consumers by ensuring access to information concerning who owned and serviced their

---

3. A "master servicer" is defined as "the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21. A subservicer does not own the right to perform the servicing, but does so on behalf of the master servicer. *Id.* TELA does not impose liability on servicers, but rather on creditors who fail to comply with various requirements under TILA. 15 U.S.C. § 1640(a).

4. Most courts addressing the issue have found that a creditor is vicariously liable for the acts of the servicer under § 1641(f)(2). *See Montano v. Wells Fargo Bank, N.A.*, Case No. 12–cv–80718, 2012 WL 5233653, at *3–4 (S.D.Fla. Oct. 23, 2012); *Santos v. Fed. Nat'l Mortg. Ass'n*, 889 F.Supp.2d 1363 (S.D.Fla. 2012); *Galeano v. Fed. Home Loan Mortg. Corp.*, Case No. 12–cv–61174, 2012 WL 3613890 (S.D.Fla. Aug. 21, 2012); *Kissinger v. Wells Fargo Bank, N.A.*, 888 F.Supp.2d

1309 (S.D.Fla.2012); *Khan v. Bank of New York Mellon*, 849 F.Supp.2d 1377 (S.D.Fla. Mar.19, 2012). *But see Holcomb v. Fed. Home Loan Mortg. Corp.*, Case No. 10–cv–81186, 2011 WL 5080324 (S.D.Fla. Oct. 26, 2011). Further, courts have expanded the scope of vicarious liability to hold assignees vicariously liable for their servicer's violations under § 1641(f)(2), as well. *See Runkle v. Fed. Nat'l Mortg. Ass'n*, 905 F.Supp.2d 1326, 1333 (S.D.Fla.2012), *vacated on other grounds on reconsideration*, Case No. 12–cv–61247, 2012 WL 6554755 (S.D.Fla. Dec. 10, 2012) ("[A]n interpretation of TILA that did not hold assignees liable would conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(F)(2) violations.") (internal citations omitted).

loans and how much they owed. Thus, the language of § 1641(f)(2) states that "obligors," or consumers, may send servicers requests for this information; a choice of words which, while may not be preclusive to the sending of such requests by attorneys, reflects Congress's intention that the statute serve as a framework for meaningful disclosure to borrowers with a genuine need for information regarding their loans. *See Marx v. Gen. Revenue Corp.,* —— U.S. ——, 133 S.Ct. 1166, 1172, 185 L.Ed.2d 242 (2013) ("In all statutory construction cases, the court assumes the ordinary meaning of the statutory language accurately expresses the legislative purpose."). Instead of being used as a shield, however, plaintiffs' lawyers have used TILA to spawn a cottage industry of lawsuit farming by sending requests for information and, without further inquiry, suing creditors and servicers for technical violations of the statute. Presumably, lawyers assume defendants would rather settle such claims rather than engage in costly litigation, and they use the statute's statutory damages and mandatory attorneys' fees as leveraging blocks to do so. Such strategies are particularly effective when the same lawyers bringing suit under TILA are also defending their clients in parallel foreclosure proceedings, as a creditor faced with such claims may opt to discontinue foreclosure and modify a loan in exchange for dismissal of the TILA action.

■■■ While Congress included statutory damages and attorneys' fees as incentives for lawyers to bring claims under TILA, where such claims exceed the scope of Congress's intent, the Court may deny relief. In particular, where the application of a statute is at odds with its spirit and purpose as intended by its drafters, "the intention of the drafters ... controls." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.,* 550 U.S. 81, 105, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007) (J. Stevens, concurring) ("As long as the court is faithful to the intent of Congress, the decision to override the strict interpretation of the text is a correct performance of the judicial function."). This doctrine, sometimes referred to as the "anti-absurdity canon," empowers courts to preserve the legislative integrity of a statute by preventing absurd results in its application. *See Silva–Hernandez v. U.S. Bureau of Citizenship and Immigration Servs.,* 701 F.3d 356, 363 (11th Cir.2012). Here, the Court finds that the invocation of this doctrine is necessary to promote Congress's intent and safeguard TILA from manipulative practices of plaintiffs' attorneys attempting to pervert its effect.

In this case, allowing Loan Lawyers to capitalize on alleged defects in a response to a request for information sent to Wells Fargo while foreclosure proceedings were pending between parties is not in keeping with the spirit or purpose of TILA as a framework for meaningful disclosure and consumer protection. Specifically, Wells Fargo initiated foreclosure proceedings against Plaintiffs on July 15, 2008. In those proceedings, Plaintiffs were represented by Loan Lawyers. Loan Lawyers waited until June 21, 2011 to send Wells Fargo a request for information under TILA. Loan Lawyers sent the request directly to Wells Fargo, and did not forward a copy to Wells Fargo's counsel. After Wells Fargo responded, Loan Lawyers, on behalf of Plaintiffs, filed suit against Defendants without any further inquiry or request for clarification. It is clear from the facts that Plaintiffs did not suffer from any meaningful deprivation of information concerning their mortgage loan; if Loan Lawyers did not know the owner or master servicer of Plaintiffs' loan or the amount of money Plaintiffs owed, it could

have easily acquired such information through discovery in the state foreclosure action, or even through such traditional means as *asking* Wells Fargo's counsel. This is further evidenced by the fact that Loan Lawyers waited over two years from the commencement of the foreclosure proceedings to send its request, and then delivered it directly to Wells Fargo without noticing its counsel. Loan Lawyers's advancements in this action are not grounded on genuine failures of disclosure or surreptitious loan practices, but rather as a superfluous attempt to leverage settlement and obtain fees. Such actions, even if supported by a strict interpretation of the text, are contrary to the intent of the statute, and thus fail as a matter of law. *See Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.").

The Court is not convinced by Plaintiffs arguments otherwise. Plaintiffs point out that other courts have declined to dismiss actions brought under TILA § 1642(f)(2) and 12 C.F.R. § 226.36(c)(1)(iii) when defendants have alleged such misuse. The cases which Plaintiffs cite, however—*Santos v. Fed. Nat'l Mortg. Ass'n,* 889 F.Supp.2d 1363 (S.D.Fla.2012) and *Galeano,* 2012 WL 3613890—are inapposite. In neither of those cases were parties engaged in foreclosure proceedings when the alleged violation occurred. *See Santos,* 889 F.Supp.2d at 1365–66; *Galeano,* 2012 WL 3613890, at *3. Here, Plaintiffs, represented by Loan Lawyers, were engaged in a state foreclosure action with Wells Fargo when the request for information was made and when Defendants' alleged violations took place. Thus, whereas the plaintiffs' requests for information in *Santos* and *Galeano* may have been legitimate,

here they were not. As explained above, these factual distinctions merit dismissal.

TILA must be construed "in order to best serve Congress' intent." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998). Here, the Court finds that Plaintiffs' claims are contrary to Congress's intent and at odds with the purpose and spirit of the law. Thus, Plaintiffs' claims are dismissed.

## IV. Conclusion

The Court has carefully considered the motions, responses, replies, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motions to dismiss [DE 23, 24] are GRANTED. Plaintiffs' claims are **DISMISSED WITH PREJUDICE.** The Clerk of Court is directed to **CLOSE** this case and **DENY** any pending motions as **MOOT.** Final judgment will be entered for Defendants by separate order.

**DONE AND ORDERED.**