Marie **LUCIEN,** Plaintiff,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION and Green Tree Servicing LLC,** Defendants.

**Case No. 13–CV–62399.**

United States District Court, S.D. Florida.

Signed May 23, 2014.

Yechezkel Rodal, Aaron David Silvers, Loan Lawyers, LLC, Plantation, FL, for Plaintiff.

David Bruce McCrea, Shutts & Bowen, Miami, FL, George N. Andrews, Shutts & Bowen LLP, Fort Lauderdale, FL, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

PAUL C. HUCK, District Judge.

Once again, a borrower facing foreclosure has invoked technical requirements under the Truth in Lending Act ("TILA") against her lender, and once again this Court is called upon to construe TILA's confusing and often conflicting statutory

scheme, which has resulted in fractured decisions in this district. Despite the questionable nature of this suit, which seeks damages and attorneys' fees for a failure to provide loan payoff information that is now moot, the Court finds that TILA does provide for liability against lenders for servicing violations like the one at issue here. Therefore, for the reasons discussed below, the Motion to Dismiss is GRANTED as to Defendant Green Tree Servicing LLC ("Green Tree"), and DE-NIED as to Defendant Federal National Mortgage Association ("Fannie Mae").

## I. FACTS

On August 2, 2007, Plaintiff Marie Lucien borrowed $188,000 from National City Bank, secured by a mortgage on Lucien's property. Mot. to Dismiss at 3. Fannie Mae now owns the loan which is serviced by Green Tree. On or about November 13, 2012, Lucien, through counsel, sent Green Tree a written request to provide an accurate statement of the total outstanding balance that would be required to satisfy the mortgage in full. Compl. ¶ 18. Green Tree did not respond with the payoff information. In June 2013, Green Tree, as servicer for Fannie Mae, commenced foreclosure proceedings contending that Lucien was in default of her mortgage. Mot. to Dismiss at 3.[1] A month after being served in the foreclosure action, Lucien commenced this action.

Lucien has sued Defendants based on Green Tree's alleged failure to timely provide an accurate payoff statement for the mortgage following Lucien's demand pursuant to Regulation Z, which implements TILA.[2] 12 C.F.R. § 226.36(c)(1)(iii). Lucien seeks to hold Green Tree liable for failing to timely provide the payoff statement, and Fannie Mae, the mortgage owner, vicariously liable for Green Tree's acts. Lucien seeks declaratory judgment and statutory damages.

Defendants move to dismiss. They argue that the provision of Regulation Z at issue here pertains only to high cost loans, and Lucien failed to plead that her mortgage meets the definition of "high cost" prescribed by 15 U.S.C. § 1602(aa). As to Green Tree, Defendants argue that a servicer cannot be liable under TILA unless it also owns the loan. Defendants also argue that there is no private right of action for violation of Regulation Z (12 C.F.R. § 226.36(c)(1)(iii)) for violations by either Green Tree or Fannie Mae. Defendants further argue that as an assignee of the original lender, Fannie Mae's liability under TILA is limited to two circumstances, neither of which is present here. Additionally, Defendants argue that even if the Court were to find assignee liability under TILA, Fannie Mae cannot be held vicariously liable for Green Tree's actions. Finally, Defendants argue that declaratory judgment is either legally precluded or superfluous.

The Southern District of Florida is divided on almost every issue Defendants raise. Furthermore, the parties represent that to the best of their knowledge no cases dealing with these issues are currently pending in the Eleventh Circuit or

---

1. Defendants submit that the loan has since been modified, and Lucien has made at least some payments on the modified loan. Reply at 4.

2. Lucien also initially alleged violations of 15 U.S.C. § 1641(f)(2) for failure to provide the name and address of the master servicer on the mortgage. See Compl. ¶ 1 [D.E. No. 1–1].

Lucien later dropped Count II, which dealt with this alleged violation, and any other references to § 1641(f)(2) in her Complaint. [D.E. No. 16]. However, as discussed in more detail below, cases analyzing § 1641(f)(2) are instructive as to the application of Regulation Z.

any Federal Court of Appeals. [D.E. No. 49]. The courts' divergence on these issues stems from an astounding lack of clarity in the statute. The differing outcomes reflect a tension between construing TILA and Regulation Z to give effect to the apparent remedies they create and construing the statute literally to preclude those remedies, despite Congress's likely (though not explicit) intent. As discussed more fully below, the Court finds, along with the majority of courts in this and other districts, that TILA liability extends to mortgagees like Fannie Mae in this case.

## II. ANALYSIS

■ The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. "... TILA creates a private cause of action for actual and statutory damages for certain disclosure violations, 15 U.S.C. § 1640(a)." *Khan v. Bank of N.Y. Mellon,* 849 F.Supp.2d 1377, 1378 (S.D.Fla.2012). "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998).

The provision of TILA that creates a private cause of action provides,

Except as otherwise provided in this section, any **creditor** who fails to comply with **any requirement imposed under this part,** including ... subsection (f) or (g) of section 1641 of this title ... with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) ... (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000;

. . .

(3) in the case of any successful action to enforce the foregoing liability ... the costs of the action, together with a reasonable attorney's fee as determined by the court ...

15 U.S.C. § 1640(a) (emphasis added).

Plaintiff brings this action under Regulation Z, which was promulgated to implement TILA. 12 C.F.R. § 226.36. Regulation Z provides, in relevant part,

(c) Servicing Practices.

(1) in connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall—

. . .

(iii) Fail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specific date.

12 C.F.R. § 226.36(c)(1)(ii).

Courts in this district have reached different conclusions about both whether a private right of action exists for violations of Regulation Z and whether creditors can be held vicariously liable for their servicers' violations. One court has also held that Regulation Z applies only to "high-cost" mortgages.

A further wrinkle in this case is that TILA distinguishes between original creditors and their assignees. The term "credi-

tor" applies only to "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness...." 15 U.S.C. § 1602(g). Fannie Mae is not the original creditor, but an assignee of the original creditor, National City Bank. Fannie Mae argues that TILA limits assignee liability, and that the alleged failure to provide an accurate payoff statement does not fall within the limited categories of assignee liability available under TILA. As with the issues presented above, courts in this district are split on the issue of assignee liability. Each issue is addressed below.

### A. Servicer liability under TILA's civil damages provision, 15 U.S.C. § 1640

■ Green Tree, as servicer, cannot be held liable under 15 U.S.C. § 1640. The text of TILA's civil damages provision only provides for *creditor* liability—not servicer liability. 15 U.S.C. § 1640(a) ("... any creditor who fails to comply with any requirement imposed under this part ..."). Courts applying TILA uniformly hold that there is no servicer liability under TILA.[3] *E.g., Khan*, 849 F.Supp.2d at 1379 ("TILA, however, does not impose liability on servicers, but rather provides a private cause of action against 'creditors who fail [ ] to comply with any requirement imposed under ... section 1635 of this title [and] subsection (f) or (g) of section 1641' "); *Runkle v. Fed. Nat'l Mortg. Assoc.*, 905 F.Supp.2d 1326, 1331 (S.D.Fla.2012) (partially vacated on other grounds) (same); *Galeano v. Fed. Home Loan Mortg. Corp.*, No. 12–CV–61174, 2012 WL 3613890 (S.D.Fla. Aug. 21, 2012) (same). Because servicers cannot be held liable under TILA, and, by extension, regulations promulgated thereunder,

Plaintiffs' claims against Green Tree are dismissed.

Green Tree also cannot be held liable as an assignee. As evidenced by Green Tree's response to Plaintiff's document request, Fannie Mae, not Green Tree, owns Lucien's mortgage. Compl. Ex. B.

### B. Applicability of the payoff statement requirement in 12 C.F.R. § 226.36(c)(1)(iii)

■ Defendants argue that 12 C.F.R. § 226.36(c)(1)(iii) only applies to high cost mortgages. Only one court in this district has so held, and dismissed the claim where a plaintiff failed to plead that her loan fell within TILA's definition of a high-cost loan. *Montano v. Wells Fargo N.A.*, No. 12–CV–80718, 2012 WL 5233653, at *6 (S.D.Fla. Oct. 23, 2012). No other court has followed *Montano* on this point, and this Court also declines to do so. *See Runkle*, 905 F.Supp.2d at 1330–31; *Cenat v. U.S. Bank, N.A.*, 930 F.Supp.2d 1347 (S.D.Fla.2013); *Danier v. Fed. Nat'l Mortg. Assoc.*, No. 12–cv–62354, 2013 WL 462385, at *4 (S.D.Fla. Feb. 7, 2013).

The *Montano* court states that the Federal Reserve Board promulgated the payoff statement requirement in Regulation Z pursuant to 15 U.S.C. § 1639(*l*)(2) (Renumbered to § 1639(p)(2)), which provides,

(2) Prohibitions

The Bureau, by regulation or order, shall prohibit acts or practices in connection with—

(A) mortgage loans that the Bureau finds to be unfair, deceptive, or designed to evade the provisions of this section;

. . .

*Id.* The *Montano* court goes on to state, "Section 1639 generally applies to high cost mortgages referred to in 15 U.S.C.

---

3. There is an exception to this rule where the servicer is also a current or former owner of

the loan. § 1640(f)(1). That is not the case here.

§ 1602(aa) [renumbered to § 1602(bb) ]," which defines the term "high cost mortgages." *Id.* Indeed, many provisions of § 1639 do refer to high cost mortgages. However, § 1639 does not have a blanket provision stating that it applies only to high-cost mortgages. Rather, several subsections of § 1639 refer specifically to § 1602(aa). Notably, § 1639(p)(2) *does not* refer to § 1602(aa). As stated by the U.S. District Court for the District of Columbia,

> The text of [§ 1639(p)(2) ] is broad and provides no indication that it is to be limited in scope, let alone limited to high cost mortgages under section 1602(aa). If Congress intended such a limitation on the Board's authority in [§ 1639(p)(2) ], Congress would and could have included within the text of that subsection language referring to Section 1602(aa) high-cost mortgages, just as it did for other subsections in Section 1639.

*Nat'l Assoc. of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.,* 773 F.Supp.2d 151, 168 (D.D.C.2011).

The Court agrees with the *National Association of Mortgage Brokers* analysis that § 1639(p)(2)'s application is not limited to high-cost loans. Thus, the payoff statement requirement in 12 C.F.R. § 226.36(c)(1)(iii), promulgated under § 1639(p)(2), is also not limited to high-cost loans. Therefore, Defendants' Motion to Dismiss on this ground is denied.

### C. *Vicarious liability under TILA's civil damages provision, 15 U.S.C. § 1640*

■ Defendants argue that Fannie Mae cannot be held vicariously liable for Green Tree's servicing errors. The majority of opinions out of this district have held that a creditor can be held vicariously liable for a servicer's TILA violations. *Runkle,* 905 F.Supp.2d at 1331 (holding that a creditor can be vicariously liable under TILA for a servicer's violations); *Khan,* 849 F.Supp.2d at 1382 (same); *Galeano,* 2012 WL 3613890, at *6 (same); *Kissinger v. Wells Fargo Bank, N.A.,* 888 F.Supp.2d 1309, 1315 (S.D.Fla.2012) (same); *Montano,* 2012 WL 5233653, at *3 (same); *see also Signori v. Fed. Nat'l Mortg. Assoc.,* 934 F.Supp.2d 1364, 1367 n. 3 (S.D.Fla. 2013) (noting split in authority in the Southern District of Florida regarding vicarious liability without reaching the issue). Courts in other districts have also found that creditors can be vicariously liability for TILA violations. *Rinegard–Guirma v. Bank of Am. N.A.,* No. 3:10–cv–01065–PK, 2012 WL 1110071, at *9 (D.Oregon, Apr. 2, 2012); *Consumer Solutions REO, LLC v. Hillery,* No. C–08–4357 EM, 2010 WL 1222739, at *5 (N.D.Ca. Mar. 24, 2010). These courts have found vicarious liability to reconcile TILA's civil damages provision—which makes only a *creditor* liable for TILA violations—with TILA provisions that impose obligations on *servicers.* In this analysis, courts have often considered 15 U.S.C § 1641(f)(2), which provides,

> (f) Treatment of servicer
>
> . . .
>
> (2) . . . Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the obligation or the master servicer of the obligation.

15 U.S.C. § 1641(f)(2).[4] As Judge Dimitrouleas explained in *Khan,* if vicarious liability were not available against creditors,

---

4. Although § 1641(f)(2) is not at issue here, courts' application of that provision is instructive because, like the payoff statement required by Regulation Z, § 1641(f)(2) deals with servicers' post-origination obligations to debtors.

neither a servicer/nonlender nor a lender/non-servicer [would be] liable for damages based upon a § 1602(f)(2) violation. The provision would as a result be left without effect, notwithstanding the rule that statutes should be read to avoid rendering superfluous any parts thereof. Acknowledging the limited case law on the issue, the imperfect character of the statutory provisions as drafted, and the admonishment that we must liberally construe this remedial consumer protection statute, the Court is persuaded that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640, a remedy section that provides for civil liability against creditors.

*Khan,* 849 F.Supp.2d at 1377. The Court adopts the reasoning of the majority of courts in this district, and holds that creditors can be held vicariously liable for their servicers' TILA violations.[5] Therefore,

Defendants' motion to dismiss on this ground is denied.

### D. *Private right of action for Regulation Z violations*

■ Defendants argue that there is no private right of action for Regulation Z violations. However, a majority of courts in this district have held otherwise. *Compare Runkle,* 905 F.Supp.2d at 1330–31 (holding that a private right of action exists for violations of § 226.36(c)(1)(iii) of Regulation Z); *Cenat,* 930 F.Supp.2d at 1355 (same); *Danier,* 2013 WL 462385, at *4 (same); *with Kievman,* 901 F.Supp.2d at 1353 (holding that there is no private right of action for violations of Regulation Z); *see also Alaimo v. HSBC Mortg. Servs., Inc.,* 13–CV–62437, 2014 WL 930787, at *3 (S.D.Fla. Mar. 10, 2014) (noting the split of authority in the Southern District of Florida regarding private right of action under Section 226.36(c)(1)(iii) of Regulation Z, but not deciding the issue). As Judge Dimitrouleas explained in *Run-*

---

5. The Court recognizes—as have other courts in this district—that Congress may not have anticipated the proliferation of cases such as this one. *See Guillaume v. Fed. Nat'l Mortg. Assoc.,* 928 F.Supp.2d 1337, 1342 (S.D.Fla. 2013); *Kievman v. Fed. Nat'l Mortg. Assoc.,* 901 F.Supp.2d 1348, 1352 (S.D.Fla.2012); *Holcomb v. Fed. Home Loan Mortg. Corp.,* 10–81186, 2011 WL 5080324, at *6 (S.D.Fla. Oct. 2, 2011). Congress enacted TILA to protect borrowers from unfair lending practices—not for borrowers to use as a sword against lenders to seek damages and delay foreclosure, or for plaintiffs' firms to create a cottage industry of suing lenders on technicalities. Defendants complain that this is yet another of the voluminous, formulaic lawsuits based on TILA and, is especially abusive because "this is a case about a payoff statement that Plaintiff never needed and no longer wants." Mot. to Dismiss at 1, Reply at 1. Indeed, this case provides an especially vivid example of the abusive nature of these suits. Here, Defendants explain that Lucien's true intention in contacting Green Tree was a loan modifica-

tion—*not* payoff of her loan. Reply at 3. Since requesting the payoff statement at issue in this case, Lucien's loan has been modified, and, by virtue of the modification the payoff figures that would have been applicable at the time of Lucien's request to Green Tree "instantly became moot." *Id.* at 4. Yet, Defendants explain, "at no time during the one-year plus timeframe that Loan Lawyers and Green Tree were communicating regarding [Lucien]'s application for permanent loan modification did Loan Lawyers or [Lucien] ask again for a payoff statement. Instead, [Lucien] filed this action against Green Tree on September 24, 2013; a short time after she entered into the trial payment plan" for her loan modification. Nevertheless, TILA and Regulation Z do provide for civil damages for Green Tree's failure to provide the payoff statement Lucien requested. And, unless and until Congress elects to amend the statute, defendants can avoid cases like this by simply providing the required information when requested.

*kle,* TILA provides, "The [Consumer Financial Protection] Bureau, by regulation or order, shall prohibit acts or practices in connection with—(A) a mortgage loans that the Bureau finds to be **unfair,** deceptive, or designed to evade the provisions of this section.... " 15 U.S.C. § 1639(p)(2)(A) (emphasis added). Failure to provide a payoff statement has been found to be "unfair." 905 F.Supp.2d at 1331. "Because the Bureau has prohibited the refusal to provide a payoff statement, it has imposed a requirement, and therefore a creditor can be liable for failing to comply with that requirement. As a result, the Court finds that a violation of 15 U.S.C. [§ 1639(p)(2) ] can be brought as a private cause of action." *Id.* This Court agrees.

Instead of addressing head-on the case law in this district that discusses whether there is a private cause of action to enforce Regulation Z, Defendants instead independently analyze the statute to determine whether a private cause of action can be inferred. Defendants argue that to impose liability on Fannie Mae here "would constitute an impermissible creation of a private right of action in contravention of the mandate set forth in *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) against judicial creation of a private right of action for violation of a federal statute, when § 1639(*l* )(2) does not, directly or by implication, provide a private right of action." Mot. to Dismiss at 15–16. Defendants' *Sandoval* analysis relies on their arguments about TILA's applicability to creditors and their assignees, with which this Court disagrees. By doing so, Defendants improperly read Regulation Z in isolation, rather than in concert with other applicable TILA provisions.

In *Sandoval,* the Court held that there was no private right of action to enforce disparate impact regulations promulgated under § 602 of Title VI of the Civil Rights Act of 1964. 532 U.S. at 293, 121 S.Ct. 1511. The Court noted that § 602 did not contain "rights-creating language." *Id.* at 288–89, 121 S.Ct. 1511. The Court also explained that the complex regulatory scheme created for enforcing regulations promulgated under § 602 "tend[ed] to contradict a congressional intent to create privately enforceable rights under § 602 itself." *Id.* at 290, 121 S.Ct. 1511.

Here, Defendants argue that neither § 1641(a) nor (e) provide a private right of action against Fannie Mae, and, read in isolation, that § 1639(*l* )(2), under which Regulation Z was promulgated, does not contain "rights-creating" language. Therefore, they argue, as with the provision at issue in *Sandoval,* "Section 1639(*l* )(2)(A) ... does not contain rights-creating language and is focused on providing rule-making authority to a federal agency." Mot. to Dismiss at 17.

Defendants' argument, however, ignores the rights-creating language in § 1641(a) of TILA, because Defendants have already concluded that § 1641(a) cannot reach Fannie Mae—both because they argue that Fannie Mae cannot be held vicariously liable for a servicer's acts, and because Fannie Mae cannot be liable as an assignee under § 1641(e). The Court rejects both of Defendants' premises for why the rights-creating language in § 1641(a) does not apply to Fannie Mae. Section 1641(a) creates a private right of action for *"any violation "* of its provisions, which includes violation of Regulation Z, promulgated pursuant to TILA's § 1639(*l* )(2)(A). Therefore, the Court holds that there is a private right of action to enforce § 226.36(c)(1)(iii) of Regulation Z, and Defendants' motion to dismiss on this ground is denied.

### E. *Assignee liability*

■ Under TILA, "[t]he term 'creditor' refers only to a person who ... (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness...." 15 U.S.C. § 1602(g). Thus, Fannie Mae is not a "creditor," but an assignee of the original creditor. Fannie Mae argues that TILA limits assignee liability to two specific situations, neither of which is presented here. TILA provides,

(e) Liability of assignee for consumer credit transactions secured by real property

(1) In general

*Except as otherwise specifically provided in this subchapter,* any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor *only if—*

(A) the violation for which such action or proceeding is brought is apparent on the face of the *disclosure statement* provided in connection with such transaction pursuant to this subchapter; and

(B) the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e) (emphasis added). Thus, Fannie Mae argues, liability attaches to an assignee *only* where a TILA provision *specifically* provides for assignee liability or where "an original lender's failure to make the required *pre-loan* disclosures is apparent on the face of the disclosure document." Mot. to Dismiss at 3 (emphasis added). The payoff statement request at issue in this case occurred after

the original creditor's initial disclosures, and indeed after Fannie Mae became the assignee of the original creditor. Thus, Fannie Mae argues, the request *could not* have been "apparent on the face" of any disclosure statement Fannie Mae received from the original creditor, and therefore, Fannie Mae as assignee cannot be liable under TILA.

In response, Lucien argues that "disclosure statements" as used in § 1641(e) are not limited to pre-loan disclosures. While the term "disclosure statement" is not defined in TILA, Lucien argues that § 1641(f)(2) imposes a "disclosure" requirement upon servicers to provide the borrower with information about the owner or master servicer of the loan, and § 1641(g) similarly imposes a "disclosure" requirement upon new creditors.[6]

The courts that have considered this issue have reached different conclusions, but all agree that the statute, as drafted, makes little sense. Judge Scola and the Second Circuit have chosen to apply the statute literally, and held that assignees cannot be liable under TILA for obligations that arose after the assignment took place because, by definition, those violations could not have been "apparent on the face of the disclosure statements" provided by the original creditor. *Vincent v. The Money Store,* 736 F.3d 88, 109 (2d Cir.2013); *Signori,* 934 F.Supp.2d at 1368 (Scola, J.); *Alaimo,* 2014 WL 930787, at *3 (Scola, J.); *Alaimo,* 2014 WL 930787, at *3 (Scola, J.). Both courts note that such a construction creates a loophole for assignees, but reason that it is up to Congress to close that loophole. Judges Dimitrouleas and Marra, and one decision out of the Northern District of California have held that assignees *can* be liable for servicing failures, reasoning that creditors and as-

---

**6.** It should be noted that neither § 1641(f) nor (g) uses the words "disclosure statement" to describe servicers' and creditors' informational requirements.

signees are identically situated with regards to post-origination violations, and should be treated the same under the statute. *Runkle*, 905 F.Supp.2d at 1333 (Dimitrouleas, J.); *St. Breux v. U.S. Bank N.A.*, 919 F.Supp.2d 1371 (S.D.Fla.2013) (Dimitrouleas, J.); *Cenat*, 930 F.Supp.2d at 1355 (Marra, J.); *Hillery*, 2010 WL 1222739, at *4; *Rinegard–Guirma*, 2012 WL 1110071, at *10.

The Court holds that because the informational requirements, such as the request for a payoff statement in this case, can *only* arise after origination, Congress's limitation on Assignee liability in § 1641(e) was not intended for these situations. Rather, the limitation on assignee liability properly refers only to the "assignee's liability *for the original creditor's violation* of the act," *Vincent*, 736 F.3d at 107 (quoting S.Rep. No. 96–73, at 18 (1979)), and does not limit the assignee's liability for *post-assignment* violations. As Judge Dimitrouleas reasoned in *Runkle*, "if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers." *Id.*

TILA is a consumer protection statute. One of the protections it offers is a mechanism for borrowers to obtain the payoff information for their loans. That Con-

gress would offer this protection only to borrowers whose loans happen to be owned by the original creditor defies the very purpose of the statute—particularly given how common it was in 2009, when Congress amended TILA, for loans to be sold off for securitization. Thus, Fannie Mae may be held liable as an assignee, and the Motion to Dismiss on this ground is denied.[7]

### F. *Declaratory judgment*

Defendants argue that because § 226.36(c)(1)(iii) of Regulation Z does not provide a private right of action, Lucien is not entitled to declaratory judgment. Because the Court holds that § 226.36(c)(1)(iii) does provide a private right of action, it will not dismiss Lucien's claim for declaratory judgment.

### III. CONCLUSION

The Motion to Dismiss is GRANTED as to Green Tree, because Green Tree cannot be held liable under TILA for its servicing violations. The Motion is DENIED as to Fannie Mae.

---

7. In holding that assignees can be liable for post-assignment servicing violations, the Court does not adopt Plaintiff's suggestion that the term "disclosure statement" as used in § 1641(e) can refer to post-closing TILA requirements. The term "disclosure statement" is not defined in TILA, but in the lending industry, "TILA disclosures" is a term of art that generally refers to specific pre-closing disclosures required of the lender. *See* Mot. to Dismiss at 7–9. The Second Circuit reviewed the legislative history of the limitation on assignee liability in *Vincent*, and stated, "it appears reasonable to conclude that when Congress amended TILA, its primary concern was limiting assignee liability for an initial creditor's violations of TILA's

*disclosure* requirements. Indeed, in the same breath, the Senate Banking Committee Report clarified that consumers could continue to exercise their right to rescission against assignees, in the absence of which the right would provide little or no effective remedy." 736 F.3d at 108 (emphasis in original); *see also Hillery*, 2010 WL 1222739, at *3 (reasoning that a failure to supply the name of the loan's owner or master servicer as required under § 1641(f)(2) "has nothing to do with a disclosure statement"). To read the phrase "disclosure statement" as used in § 1641(e) to apply to post-closing documents would ignore the reality as reflected in industry's use of the term.