IT IS SO REPORTED.

Rosemene ST. BREUX, Plaintiff,

v.

U.S. BANK, NATIONAL ASSOCIATION, as Trustee for the C–Bass Mortgage Asset–Backed Certificates, Series 2007–CB3, Defendant.

Case No. 12–61613–CIV.

United States District Court, S.D. Florida.

Jan. 29, 2013.

Yechezkel Rodal, Loan Lawyers, LLC, Plantation, FL, for Plaintiff.

William Patrick Heller, Jason Patrick Bichsel, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Defendant.

### ORDER DENYING SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss [DE 7], filed on September 28, 2012. The Court has carefully considered the motion, Plaintiff's Response in Opposition [DE 9], Defendant's Reply [DE 15], and arguments made at an oral hearing on November 19, 2012. The Court converted the motion into a motion for summary judgment. [DE 19]. The parties then submitted a joint statement of material fact, [DE 20], which the Court has also considered. The Court is otherwise fully advised in the premises.

### UNDISPUTED MATERIAL FACTS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The facts in this case are not in dispute. Plaintiff had a mortgage on her home in Broward County, Florida. In her mortgage, Plaintiff and the original mortgagee, Nation One Mortgage Company, Inc., agreed that

[n]either Borrower nor Lender may commence, join, or be joined to any judicial action ... that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party ... of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[DE 20–1 at 21 ¶ 20]. Defendant U.S. Bank is not listed on either the note or the mortgage. Plaintiff's loan was assigned to the C–Bass Mortgage Loan Trust 2007–CB3, Asset–Backed Certificates, Series 2007–CB3. The Pooling and Servicing Agreement for the Trust lists Litton Loan Servicing, L.P. as the master servicer and U.S. Bank as the trustee.

There is no dispute that U.S. Bank took the role of an assignee of the subject loan and that the assignment was voluntary. Nor is there any dispute that U.S. Bank has retained Litton as the loan servicer at all material times.

Plaintiff sent Litton a written request on July 12, 2011, asking Litton to identify the owner or master servicer of Plaintiff's mortgage obligation. Litton responded, "The current beneficial holder of the loan is U.S. Bank, National Association. However, since Litton is currently servicing the loan, we recommend you submit all inquiries to the address listed on the top of page one." Litton included its phone number, address, fax number, and website. Litton did not specifically identify itself as the "master servicer," though it in fact was the master servicer. Because Litton did not provide the name, address, and telephone number of the owner, nor identified

itself as the master servicer, Plaintiff claims that Litton's response violated a disclosure provision of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2). Plaintiff then sued U.S. Bank without providing notice or an opportunity to cure.

## DISCUSSION

U.S. Bank argues that the Court need not consider the merits of Plaintiff's TILA claim because Plaintiff is contractually barred from bringing this action without giving U.S. Bank notice and an opportunity to cure. The Court will begin by analyzing this threshold issue.

### A. May U.S. Bank Invoke the Notice & Cure Provision?

In her mortgage, Plaintiff promised to give Nation One Mortgage Company notice prior to any suit arising due to Nation One Mortgage Company's breach of "any duty owed by reason of" the mortgage. [DE 20–1 at 21 ¶ 20]. At least two questions arise from this clause: first, whether U.S. Bank as an assignee steps into Nation One's shoes for the sake of this provision; second, whether the current TILA action arises by way of any duty owed by reason of the mortgage.

■ Plaintiff argues rigorously that the contract would require notice only if Nation One had breached the contract. Because neither U.S. Bank nor Litton was a party to the contract, Plaintiff surmises that U.S. Bank cannot enforce this provision. The Court disagrees. The mortgage clearly anticipates that Nation One could sell it. See [DE 20–1 at 21 ¶ 20]. Furthermore, the mortgage states, "The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." Id. at 19 ¶ 13. The benefit of a notice and cure provision runs to U.S. Bank as assignee. If the notice and cure provision is an affirmative defense in this case, U.S. Bank would be able to invoke it.

■ Plaintiff also briefly argues that the notice and cure provision cannot be utilized because Litton is the entity that breached the mortgage contract and Litton is not an assignee of Nation One Mortgage. Plaintiff's argument is belied by Plaintiff's use of vicarious liability in all other portions of her complaint. Plaintiff is not suing Litton; she is suing U.S. Bank. Plaintiff has argued that U.S. Bank is liable because of its agent's actions on its behalf. This Court has found that a creditor is liable for its assignee's breach of § 1641(f)(2).[1] *Khan v. Bank of N.Y. Mellon*, 849 F.Supp.2d 1377 (S.D.Fla.2012). Therefore, if the notice and cure provision applies, the fact that it was Litton that may have violated § 1641(f)(2) would be attributed to U.S. Bank, and therefore it can fairly be said that U.S. Bank, acting through its agent, breached a duty owed by reason of the mortgage, triggering the notice and cure provision.[2]

---

1. Whether an assignee will be held liable for its servicer's violations will be addressed later in this Order.

2. The Court acknowledges Plaintiff's citation to *Schmidt v. Wells Fargo Home Mortgage*, No. 3:11–CV–059, 2011 WL 1597658 (E.D.Va. Apr. 26, 2011), which Plaintiff quoted. "The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer." *Id.* at *3. In that case, Wells Fargo was the loan servicer. *Id.* at *1. The plaintiffs were suing Wells Fargo directly. *Id.* at *3. The present case is different. It is the assignee of the lender, entitled to the benefits of the mortgage as recognized in the mortgage, that is invoking the notice and cure provision. Indeed, this case is more like *Johnson v. Countrywide Home Loans, Inc.*, cited in the *Schmidt* decision, in which a substitute trustee was allowed to use the notice and cure provision in the original mortgage as a bar to suit. *See* 2010 WL 5138392 (E.D.Va. Dec. 10, 2010).

*B. Does the Mortgage Require Notice and an Opportunity to Cure in this TILA Case?*

■ The major caveat in the preceding paragraph is that the notice and cure provision of the mortgage can act as a bar only if it applies by its terms to this action. The provision applies if Plaintiff is alleging that U.S. Bank breached a duty "owed by reason of" the mortgage. This Court has previously construed a mortgage provision to find that a subsequent TILA suit was governed by the underlying mortgage contract. *See Foley v. Wells Fargo Bank, N.A.,* 849 F.Supp.2d 1345, 1352 (S.D.Fla. 2012).

In *Foley,* the plaintiff sued Wells Fargo under TILA. *Id.* at 1346. Wells Fargo was the owner of the mortgage and note. *Id.* Wells Fargo was also the servicer. *Id.* Wells Fargo moved to strike the plaintiff's request for a jury trial because in the mortgage the plaintiff waived his right to trial by jury "in any action, proceeding, claim, or counterclaim ... arising out of or in any way related to this Security Instrument or Debt Instrument." *Id.* at 1352. The plaintiff argued that his TILA claim did not arise out of the mortgage. *Id.* Because plaintiff repeatedly referred to the note throughout his complaint, the Court ruled that the TILA action was related in some way to the loan documents, and thus the "related in any way" language of the mortgage applied. *Id.* The Court was careful to note that the plaintiff's claim likely did not arise from the loan documents. *Id.*

U.S. Bank argues that *Foley* is closely analogous to this case. Plaintiff promised to give notice before bringing a lawsuit for breach of "any provision of, or any duty owed by reason of" the mortgage. The only reason U.S. Bank and Litton have a TILA duty is because Plaintiff obtained a mortgage. Therefore, U.S. Bank's TILA

duties, as a matter of but-for causation, were owed by reason of the mortgage.

The Eleventh Circuit recently weighed in on how closely a cause of action must relate to a mortgage in order to be governed by the terms of that mortgage. *See Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335 (11th Cir.2012). In that case, Byers purchased a lot in the Bahamas. *Id.* at 1338. His purchase contract required him to litigate all disputes in the Bahamas. *Id.* He had a mortgage with Bahamas Sales with a forum-selection clause designating Florida as the proper forum. *Id.* After Bahamas Sales sued Byers in Florida for failing to make payments under the mortgage, Byers counterclaimed against Bahamas Sales claiming that it had engaged in appraisal fraud. *Id.* Bahamas Sales persuaded the trial court that Byers should not be allowed to bring his appraisal fraud claim in Florida because he was bound by the forum-selection clause in the purchase contract to sue in the Bahamas. *Id.* at 1338.

Byers appealed, arguing that his counterclaim did not relate to the lot purchase contract. *Id.* at 1340. The Eleventh Circuit began its analysis by setting forth the standard: "To determine if a claim falls within the scope of a clause, we look to the language of the clause." *Id.* The clause stated, "[T]he courts of the Commonwealth [of the Bahamas] ... will be the venue for any dispute, proceeding, suit or legal action ... related in any way to [the lot purchase contract]." *Id.* The Eleventh Circuit was thus forced to address whether an appraisal fraud claim related in any way to the lot purchase agreement. It then provided helpful analytical guideposts:

A claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Telecom Italia, SpA v. Whole-*

*sale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir.2001). Moreover, the fact that a dispute could not have arisen but for an agreement does not mean that the dispute necessarily "relates to" that agreement. *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1347 (11th Cir.2008). The phrase " 'related to' marks a boundary by indicating some direct relationship." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir.2011). Requiring a direct relationship between the claim and the contract is necessary because, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere." *Id.* at 1218–19 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995)) (alteration in original) (internal quotation marks omitted). *Id.* at 1340–41.

The Eleventh Circuit then rejected the trial court's reasoning. The trial court had surmised that the forum-selection clause was "very broad," it gave rise to the parties' relationship, and without the lot purchase contract, Byers would not have signed the mortgage and become a victim of appraisal fraud. *Id.* at 1341. In rejecting that line of thinking, the Eleventh Circuit held that the appraisal fraud claim did not have a direct relationship to the lot purchase contract. *Id.* at 1341. It was also not the source of several parties' relationship because they were not signatories to the lot purchase agreement. *Id.* Finally, the Eleventh Circuit noted that "a but-for relationship between the claims and the lot purchase contract does not mean the claims 'relate to' the contract." *Id.* Concluding that the appraisal fraud claim was not "a fairly direct result of the performance of contractual duties" under the lot purchase contract, the Eleventh Circuit found that the forum selection clause in the lot purchase agreement did not bar Byers from in bringing his counterclaim in Florida.

The decision of whether the notice and cure provision applies in this case is a close one. The provision only applies if U.S. Bank breached "any provision of, or any duty owed by reason of" the mortgage. Though U.S. Bank makes a fair but-for argument, the Court concludes that the duty to disclose the name of the owner or master servicer is not a duty owed by reason of the mortgage. It is a duty owed by reason of TILA. The parties have not directed the Court to any provision in the mortgage requiring U.S. Bank or its servicer to provide the name, address, and phone number of the owner or master servicer. In the absence of TILA, there would be no suit. The claim is not directly related to the mortgage, so the notice and cure provision does not apply.

*C. Compliance with § 1641(f)(2)*

The Court now moves to the substance of Plaintiff's Amended Complaint. Plaintiff asked Litton for the name, address, and phone number of the owner or master servicer of her obligation. Litton responded by giving the name of the owner, but did not provide its address or phone number. Litton did indicate that Litton was servicing the loan and gave its own name, address, and phone number. Litton did not state whether it was the master servicer or a subservicer. There were no contextual clues from which Plaintiff could have deduced Litton's true status as either master servicer or subservicer. Nevertheless, U.S. Bank insists that Litton's disclosure was sufficient.

The Court recently addressed a similar situation in *Runkle v. Federal National Mortgage Association*, 905 F.Supp.2d 1326, No. 12–61247, 2012 WL

5861803 (S.D.Fla. Nov. 16, 2012). The Court's holding was that 15 U.S.C. § 1641(f)(2) did not require the magical legal word "master servicer" if the servicer disclosed in layman's terms that it was indeed the master servicer. *Id.* at 1329, at *3.[3] Following *Runkle,* the Court finds that Litton was not obligated to use the magic word "master servicer." Nevertheless, Litton did not indicate in any way that it was the master servicer, so Litton violated § 1641(f)(2).[4]

## D. Assignee Liability for Servicer's Faults

In *Runkle,* the Court also confronted the issue of whether an assignee could be liable for its servicer's § 1641(f)(2) errors. The Court found that principles of vicarious liability applied. The Court will set forth the reasoning of that Order here:

First, TILA provides that assignees are liable just like creditors, so long as the TILA violation is "apparent on the face of the disclosure statement." § 1641(a). Setting aside the "apparent on the face" language for a moment, subsection (a) makes it apparent that assignees can be liable like creditors. Such a result makes sense. The only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation,

whereas an assignee only receives the ownership of the loan without having originated the loan. *See* 15 U.S.C. §§ 1602(g), 1641(a). The type of conduct that violates TILA's informational request provisions like asking for a payoff statement, however, only arises post-origination. The distinction between originator and assignee therefore is irrelevant.

From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers. In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment. Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms. Because the relationship is the same, liability principles should be the same.

Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, *see Khan,* 849 F.Supp.2d at 1382, it similarly makes no sense to absolve the assignee of all liability. Once the assignee receives the assignment, the assignor is most likely

---

**3.** The Court subsequently granted a motion for reconsideration in *Runkle* because the plaintiff produced evidence that the supposed master servicer was in fact only a subservicer. *See Runkle v. Fed. Nat'l Mortg. Ass'n,* 2012 WL 6554755 (S.D.Fla. Dec. 10, 2012). The inferential error occurred because the Court did not contemplate the situation in which the owner of the loan obligation would also be the master servicer and then subcontract to a subservicer. *See id.* at *1. The Court's holding that magic language was not required, however, remained undisturbed.

**4.** There is one minor complication in this case. Plaintiff alleged that U.S. Bank employed Litton directly. [DE 5 ¶ 9]. It could be

argued that Plaintiff must have known Litton was the master servicer. Viewed in the light most favorable to Plaintiff, there is no allegation that Plaintiff knew Litton was the master servicer at the time Plaintiff received Litton's initial response. The violation of TILA occurs at the time of the nondisclosure, *see Santos v. Fed. Nat'l Mortg. Ass'n,* 889 F.Supp.2d 1363, 1365–66 (S.D.Fla.2012), so Plaintiff may not have known until after the violation that Litton was the master servicer. Moreover, as the Court recognized in granting reconsideration in *Runkle,* there are circumstances in which an assignee can directly contract with a servicer, but yet that servicer may still be a subservicer. *See Runkle,* 2012 WL 6554755, at *1.

out of the picture. If an assignee were not responsible for its servicer's conduct, no party could be liable. *Id.* There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

The wrinkle, which was set aside for a moment, is that for an assignee to be liable, the TILA violation must be "apparent on the face of the disclosure statement." § 1641(a). It is apparent from the face of Seterus' response that no payoff statement was attached. Fannie Mae argues that § 1641(a) means that an assignee can only be liable for documents created at the time of the origination of the loan (Fannie Mae's interpretation of "disclosure statements"), which documents were assigned to the assignee. If so, then an assignee would not be liable for a post-assignment TILA error. The Court must resolve whether § 1641(a) prohibits a plaintiff from placing liability on an assignee after the assignment has been completed, such as when an assignee's servicer violates TILA.

The Court does not believe that assignees are only liable for lending errors arising prior to the assignment. Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from sister district courts.

In *Rinegard–Guirma v. Bank of America NA,* No. 3:10–cv–01065, 2012 WL 1110071, at *9 (D.Or. Apr. 2, 2012), the assignee argued that § 1641(a) limited its liability for botched post-assignment informational requests. The court acknowledged that "a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement, since a servicer's role only begins after disclosures are made." *Id.* at *9. The court found, however, that an interpretation of TILA that did not hold assignees liable would "conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations." *Id.* at *10. Citing *Khan,* the court noted that assignees obviously can be liable for failing to disclose information, pointing to the rule that servicers who are also assignees may be held liable for violations of § 1641(f)(2). *Id.*

Another court has also found that assignees can be vicariously liable for TILA violations. In *Consumer Solutions REO, LLC v. Hillery,* No. C–08–4357, 2010 WL 1222739, at *3 (N.D.Cal. Mar. 24, 2010), the court also recognized that information nondisclosure had nothing to do with a disclosure statement per se. That court found that the limitation in § 1641(a) did not apply when another section like § 1641(f)(2) created liability. "In other words, § 1641(a) addresses horizontal liability between predecessor and successor whereas § 1641(f)(2) addresses potential vertical liability as between agent and principal." *Id.*

Notwithstanding § 1641(a)'s limitation of assignee liability to errors apparent on the face of "disclosure statements," the Court finds that assignees can indeed be liable for their servicer's nondisclosures that violate TILA. The Court's position makes sense of Congress's attempt to allow borrowers to find the owners or master servicers of their obligation. It makes assignees, who are essentially just like creditors at the point at which a borrower is asking questions about a loan, liable for the faults of those they contract with to

service their loans. This encourages proper disclosure. As have other courts before it, this Court construes the statutory language of § 1641(a) in context to find assignee vicarious liability. *Runkle,* 905 F.Supp.2d at 1332–34, No. 12–61247, 2012 WL 5861803 at *6–7.[5]

■ To this reasoning, the Court would merely reemphasize that "disclosure statement" is not defined in § 1641(a) and that term can be construed to encompass postassignment disclosures. The Court acknowledges that many of the instances in TILA where disclosures are mentioned address situations at the inception of the creditor-debtor relationship. *E.g.* 15 U.S.C. § 1604 (discussing model disclosure forms for mortgage loan transactions). But not all references to disclosures occur in the pre-assignment context. When Congress amended TILA in 2009, it added § 1641(g). *See* Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658. That section states, "In addition to other *disclosures* required by this title," whenever a mortgage loan is sold, transferred, or assigned, "the creditor that is the new owner or *assignee*" must provide the obligor with contact information. 15 U.S.C. § 1641(g) (emphasis added). Congress then created a private right of action for violating this new subsection, as well as for violating 1641(f)(2). *See id.*

As the 2009 amendments demonstrate, Congress considered postassignment informational disclosures to be disclosures within the purview of TILA. By the plain terms of § 1641(g), assignees who fail to make that informational disclosure can be liable. There is no limitation of the term "disclosure statement" to mean only those disclosures made initially between the borrower and original creditor. The new § 1641(g) emphatically creates liability

purely for the assignee's own disclosures or lack thereof. At the very least, the 2009 amendments broadened the meaning of "disclosure statement" to include disclosures made by the assignee post-assignment. The Court concludes that when an assignee's servicer fails to make a disclosure under § 1641(f)(2), then the error is apparent from the face of that particular disclosure statement and an assignee may be liable.

■ For the first time in Reply, U.S. Bank suggests that 15 U.S.C. § 1641(e) applies to limit its potential liability in this case. "A new ground for summary judgment raised for the first time in a reply memorandum ... will not be considered." *Burger King Corp. v. H & H Restaurants, LLC,* No. 99–2855, 2001 WL 1850888, at *7 n. 2 (S.D.Fla. Nov. 30, 2001). Even if the Court were to consider the argument, the Court would be unlikely to accept it.

Section 1641(e) closely follows § 1641(a). For comparison, the Court will set forth the relevant portions of § 1641(a) and (e):

(a) Prerequisites

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure

---

5. This portion of *Runkle* was not affected by the Court's Order granting reconsideration.

which does not use the terms required to be used by this subchapter.

\* \* \*

(e) Liability of assignee for consumer credit transactions secured by real property

(1) In general

Except as otherwise specifically provided in this subchapter, any civil action *against a creditor* for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, *with respect to a consumer credit transaction secured by real property* may be maintained against any assignee of such creditor only if—

(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement *provided in connection with such transaction pursuant to this subchapter;* and

(B) the assignment to the assignee was voluntary.

(2) Violation apparent on the face of the disclosure described

For the purpose of this section, a violation *is* apparent on the face of the disclosure statement if—

(A) the disclosure can be determined to be incomplete or inaccurate *by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement;* or

(B) the disclosure statement does not use the terms or format required to be used by this subchapter.

15 U.S.C. § 1641(a), (e) (emphasis added to highlight distinctions between the subsections). Subsection (e) was added in 1995. *See* Truth in Lending Act Amendments of 1995, Pub.L. No. 104–29 § 7. Section 1641(f) was added at the same time. *Id.*

The Court would be unlikely to change its ruling in this case based on § 1641(e)

for several reasons. First, for the same reason that the Court found that Plaintiff's TILA claim did not arise from the mortgage, it is difficult to characterize Plaintiff's TILA claim against U.S. Bank as a "civil action ... with respect to a consumer credit transaction secured by real property." *See* § 1641(e). Plaintiff is not suing about anything related to the initial consumer credit transaction, but rather about a failed informational disclosure under § 1641(f)(2).

Second, the purpose of § 1641(e) was to "eliminate two uncertainties under the present law as to an assignee's liability for an *original creditor's* violation of the act." Senate Report No. 96–73 (1979), 1980 U.S.C.C.A.N. 280, 296 (emphasis added). This case is not about the original creditor's violation of TILA. It is about the assignee's own violation. Therefore, the language of section 1641(e) was not designed to address the problem facing the Court. The Court would therefore be inclined to find that § 1641(e) is not a bar to Plaintiff's claim.

Third, it is possible to interpret § 1641(e) in such a way as to preserve Plaintiff's claim in this case. Section 1641(e)(1) limits liability to violations apparent on the face of disclosure statements provided in connection with consumer credit transactions secured by real property "except as otherwise specifically provided in this subchapter." Folding in the understanding that the Save Our Homes Act created a new meaning of "disclosure statement," and that § 1641(f)(2) specifically creates a duty and liability for making certain disclosures, § 1641(f)(2) can be seen as a provision specifically providing assignee liability, triggering § 1641(e)(1) exception. This Court's interpretation does not make § 1641(e) superfluous, because it would still bar assignee liability for initial disclosures, such as when a loan

is originated, on which no violation was apparent.

The Court concludes that an assignee of a consumer credit transaction secured by real estate can be liable for its servicer's § 1641(f)(2) violations.

### CONCLUSION

Though Plaintiff agreed to give U.S. Bank notice of certain defects under the mortgage, Plaintiff's TILA claim is not sufficiently related to that mortgage to be governed by the notice and cure provision. Litton's disclosure to Plaintiff did not satisfy § 1641(f)(2). U.S. Bank can be liable for this post-assignment informational disclosure failure, even as an assignee.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 7], converted to a motion for summary judgment, is **DENIED.**