**Elizabeth TAUB, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**WORLD FINANCIAL NETWORK BANK, Defendant.**

**No. 12 CV 9113(CM).**

United States District Court, S.D. New York.

June 21, 2013.

Harley Jay Schnall, Law Office of Harley J. Schnall, Michael Noah Litrownik, Brian Lewis Bromberg, Bromberg Law Office, P.C., New York, NY, for Plaintiff.

David Michael Bizar, Seyfarth Shaw LLP, Boston, MA, Martin Christopher Bryce, Ballard Spahr LLP, Philadelphia, PA, for Defendant.

**DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

McMAHON, District Judge.

Plaintiff Elizabeth Taub ("Plaintiff") initiated this action on December 14, 2012, by filing a complaint against Defendant Comenity Bank, formerly known as World Financial Network Bank, successor by conversion to World Financial Network National Bank ("Defendant"). The Complaint alleges that Defendant violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by failing accurately

to disclose consumers' rights as required by the Fair Credit Billing Act ("FCBA"), a 1975 amendment to TILA, in her J. Crew Credit Card Agreement ("Agreement"). Plaintiff purports to sue on behalf of a nationwide class.

Defendant filed a motion to dismiss, on the basis that Plaintiff failed to comply with a notice and cure provision in the Agreement before bringing suit. The motion is DENIED.

## I. BACKGROUND

### a. Facts

On December 14, 2011, Plaintiff opened a J. Crew Card account for use at J. Crew retail locations and the J. Crew website. (Compl. ¶ 12). Defendant issued the credit card.

Plaintiff was given an account-opening disclosure form when she signed up for her J. Crew account. The form included a "billing rights notice" setting out the consumer's rights and creditor's responsibilities. (*Id.*).

The Agreement also contained a notice and cure provision, which stated:

> Prior to bringing a lawsuit or initiating an arbitration that asserts a claim arising out of or related to this Agreement (as further defined below, a "Claim"), the party asserting the Claim (the "Claimant") shall give the other party (the "Defendant") written notice of the Claim ... and a reasonable opportunity, not less than 30 days, to resolve the Claim.[1]

(Def.'s Mot. at 1). After receiving this document, Plaintiff made a purchase with her new card. (Compl. ¶ 12).

---

1. Incorporated by reference in Ex. A. to Compl. at ¶ 30(B).

### b. Plaintiff's Allegations

TILA requires a creditor to disclose to a new customer certain rights and responsibilities concerning billing disputes in a form prescribed by the Bureau of Consumer Financial Protection ("Bureau"). (Compl. ¶ 30). Plaintiff alleges that the billing rights notice she was given at the time she opened her J. Crew Card account was not "substantially similar" to the Bureau's Model Billing Rights Form, because it failed to disclose that consumers wishing to initiate billing-error correspondence had to contact the creditor three days before an automated payment was scheduled. (Compl. ¶ 32–33). Plaintiff also alleges that the billing rights notice omitted the description of the creditor's responsibility to inform the consumer that it had received such correspondence within 30 days after receiving it, whether the error had been corrected or not. (Compl. ¶ 34), She alleges further that the notice did not include the preconditions governing the rights and responsibilities of a consumer who became dissatisfied with goods or services purchased with the card; specifically, it did not explain that the consumer had a limited right not to pay for purchase of goods or services with which she was dissatisfied, and had a responsibility to contact the creditor in writing in the case of such dissatisfaction. (Compl. ¶ 35–36).

For each of the alleged violations of TILA, Plaintiff claims that she and the proposed class are entitled to recover up to $1,000,000 in statutory damages, along with costs and reasonable attorney fees pursuant to 15 U.S.C. § 1640(a)(2). (Compl. ¶ 38). Plaintiff does not seek actual damages.

### c. Procedural History

Plaintiff filed her complaint on December 14, 2012 under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, which authorizes private causes of action for violations of TILA and allows individuals to seek damages against "any creditor who fails to comply with any requirement" of TILA. 15 U.S.C. § 1640(a). She alleges violations of § 1637(a)(7), which requires creditors to disclose certain rights and responsibilities "in a form prescribed by the Bureau" with respect to billing disputes when a consumer opens a new account before the first transaction is made.

## II. DISCUSSION

### a. Legal Standard for Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir.2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations, citations, and alterations omitted). However, if the plaintiff's

well-pleaded allegations "nudge[ ][its] claims across the line from conceivable to plausible," the complaint will not be dismissed. *See id.* at 570, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1950–51, 129 S.Ct. 1937.

When ruling on a motion to dismiss, the court may consider the "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir.2010) (citations omitted).

### b. The Truth in Lending Act

█ The Truth in Lending Act, originally enacted in 1968, was the first federal consumer protection law. As a remedial statute, it is intended to be construed liberally in favor of the consumer. *See Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 220, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *Kurz v. Chase Manhattan Bank,* 273 F.Supp.2d 474, 477 (S.D.N.Y.2003). The purpose of the Act, and the FCBA, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

Plaintiff is a "consumer" as defined by 15 U.S.C. § 1602(i), because the complaint arises from the Defendant's extension of credit to her as a credit card holder, (Compl. ¶ 8). Plaintiff seeks to certify a nationwide class on behalf of all persons who were furnished with substantially the same account-opening disclosure form upon opening a J. Crew Card account, and who made an initial purchase on the J.

Crew Card account on or after December 14, 2011. (Compl. ¶ 15).

Defendant is a "creditor" as defined by 15 U.S.C. § 1602(g) because it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed. (Compl. ¶ 10).

Under TILA, before opening an account under an open end consumer credit plan,[2] the creditor must make certain disclosures to the consumer, including but not limited to a statement of rights and responsibilities with respect to billing disputes. 15 U.S.C. § 1637(a)(7). This statement of billing rights must be "substantially similar" to the model statement contained in Regulation Z, the set of regulations that the Federal Reserve Board created to implement TILA. 12 C.F.R. § 226.1 *et seq.;* (Compl. ¶¶ 28, 31). TILA grants borrowers a private right of action against creditors who fail to make the statutorily required disclosures. 15 U.S.C. § 1640; *Green v. Nissan of Manhattan, Inc.,* 2013 WL 2444630, at *2–3, 2013 U.S. Dist. LEXIS 78383, at *6 (E.D.N.Y. June 3, 2013).

### c. The Motion to Dismiss is Denied Because the Notice and Cure Provision Does Not Apply to Plaintiff's Claim.

█ Plaintiff does not contend that she provided notice or an opportunity to cure before filing suit. Instead, she argues that the notice and cure provision does not apply to her claim because she is alleging that Defendant engaged in a deceptive business practice—a violation of TILA—rather than breach of contract (Pl.'s Opp'n at 6).

TILA claims alleging failures to disclose, like this one, have generally survived mo-

---

**2.** An "open end consumer credit plan" is defined as "a plan under which a consumer reasonably contemplates repeated transactions, which prescribes the terms of such

transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j).

tions to dismiss—even when the contract contains a notice and cure provision for claims "arising out of" the agreement. The parties have not cited, and this Court has not found, any cases from the courts of this Circuit addressing this issue. But other courts, in other circuits, have reasoned that such provisions do not apply to suits alleging deceptive business practices (i.e., non-disclosures under TILA), because TILA claims "arise out of" alleged violations of the statute, rather than from any breach of contract. *See Abercrombie v. Wells Fargo Bank, N.A.*, 417 F.Supp.2d 1006 (N.D.Ill.2006); *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3, 2011 U.S. Dist. LEXIS 45122 at *8 (E.D.Va. Apr. 26, 2011).

■ When claims arise from actions taken pursuant to the contract or agreement at issue, a valid notice and cure provision is a precondition to the suit. *See Holtzapfel v. Wells Fargo Bank, N.A.*, 2013 WL 1337283, at *4, 2013 U.S. Dist. LEXIS 45511 at *16 (S.D.W.Va. Mar. 29, 2013); *Niyaz v. Bank of Am.*, 2011 WL 63655, 2011 U.S. Dist. LEXIS 156 (E.D.Va. Jan. 3, 2011); *Johnson v. Countrywide Home Loans*, 2010 WL 5138392, 2010 U.S. Dist. LEXIS 131112 (E.D.Va. Dec. 10, 2010). However, Plaintiff here does not allege that Defendant has violated the credit agreement; rather, she alleges that the credit agreement violated the federal law. Courts confronted with this argument have uniformly held that the notice and cure provision does not apply, and have refused to dismiss these actions brought under TILA.

In *St. Breaux v. United States Bank*, 919 F.Supp.2d 1371, 1376–77, 2013 U.S. Dist. LEXIS 18775 at *11–12 (S.D.Fla., Jan. 29, 2013), the plaintiff brought suit under TILA for allegedly deficient disclosures in a mortgage agreement. While the plaintiff had not complied with a notice and cure provision for claims "arising from" the other party's actions pursuant to the contract, the court did not dismiss the suit. Because the TILA violation provided the basis for the claim, rather than the mortgage agreement itself, the court found that the provision did not apply. *Id.*

Similarly, in *Abercrombie*, the plaintiff brought suit under TILA for deficient disclosures in a mortgage agreement, that also contained a notice and cure provision for actions "arising from" the contract. The court did not dismiss the claim even though plaintiff did not comply with the provision. It reasoned that the provision constituted a waiver of TILA's initial disclosure requirements, and that any such waiver was unenforceable, because it would contradict the policy of the statute to allow creditors to only provide accurate disclosures after the contract was signed. *Abercrombie*, 417 F.Supp.2d at 1008.

I agree that the claim asserted here does not "arise out of" the Agreement—it arises out of an alleged violation of TILA. But, unlike all the cases cited above, the credit agreement here at issue does not just require notice of claims that "arise out of" actions taken pursuant to the agreement. It also requires advance notice of claims that "relate to" the Agreement. Technically speaking, this claim relates to the Agreement. It is impossible to argue otherwise, as the claim alleges a deficiency in the disclosures contained in the Agreement.

Nonetheless, enforcement of the notice and cure provision here, as in *Abercrombie*, would essentially amount to a waiver of TILA's initial account-opening disclosure requirements, because Defendant would be able to provide deficient initial disclosures and remedy them only after the contract was signed. This would undermine Congress's intent in enacting TILA, and would be incompatible with TILA's requirements, which mandate stan-

dardized initial account-opening disclosures of credit terms so that consumers may easily compare options and make an informed choice of credit provider. As the court in *Abercrombie* explained, enforcement of notice and cure provisions in claims for deficient disclosures would "effectively gut TILA's initial disclosure requirements" and undermine Congress's intent in enacting the statute. *Abercrombie,* 417 F.Supp.2d at 1007–08.

 Additionally, enforcing strict technical compliance with TILA's requirements benefits not only each individual claimant but also the public as a whole. *Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1181 (11th Cir.1982). Any waiver of the right to bring a TILA claim is thus unenforceable, because "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

Defendant responds that enforcement of the notice and cure provision in this case would not defeat the purpose of the FCBA—which it describes as protecting consumers from unfair billing practices. It argues that, upon discovering that the disclosure was allegedly inaccurate, it would have been "simple" for Plaintiff to notify Defendant and allow it to cure any deficiencies (which would require a massive reworking of disclosures and notice to millions of similarly-situated consumers). (Def.'s Rep. Br. at 4). Attempts to distinguish *Abercrombie,* in which the court emphasized that a cure would be impossible because the consumer had already entered into the contract without being fully informed, make much of the fact that Plaintiff does not allege that she suffered an actual injury from the alleged non-disclosure.

 But a plaintiff is not required to establish that she incurred actual damages as a result of a TILA violation in order to seek statutory damages. *See Kurz,* 273 F.Supp.2d at 478. Because the purpose of TILA is to allow borrowers to compare available credit and billing terms before entering into a contract, any proven violation of the initial disclosure requirements is presumed to have caused an injury by frustrating that purpose. *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246 (3d Cir.1980).

Defendant additionally argues that this notice and cure provision applies to Plaintiff's suit by citing cases in which arbitration provisions were interpreted broadly in the Second Circuit to cover non-contractual disputes. The Second Circuit has given broad deference to these provisions because of the presumption of validity given to arbitration clauses for policy reasons. *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping and Trading, Inc.,* 252 F.3d 218, 223 (2d Cir.2001). Moreover, arbitration provisions are generally enforced even with regard to noncontractual disputes because they only dictate the manner in which claims may proceed. They do not effect any waiver of the right to bring a claim. Such provisions, therefore, do not defeat the purpose of TILA in the way that notice and cure provisions do. *See Abercrombie,* 417 F.Supp.2d at 1008 (citing *Livingston v. Assocs. in Finance, Inc.,* 339 F.3d 553, 559 (7th Cir.2003); *Randolph v. Green Tree Fin. Corp.-Alabama,* 244 F.3d 814, 817 (11th Cir.2001); *Johnson v. West Suburban Bank,* 225 F.3d 366, 371 (3d Cir.2000)).

### d. Plaintiff was Not Required to Aver in her Complaint that All Conditions Precedent Had Been Performed.

Finally, Defendant argues that it is "well settled that a party must aver generally

that all conditions precedent have been performed or occurred, in order to withstand a motion to dismiss." (Def.'s Mot. at 5). But, the only "condition precedent" about which Defendant could be speaking is the giving of notice and an opportunity to cure. Since I have held that such notice is not a condition precedent to suit, Defendant's argument fails as a matter of fact.

Regardless, the cases that Defendant cites are inapposite. Defendant cites two cases involving breach of contract claims, which, as discussed above, are not at issue in this suit. *See Teachers Ins. and Annuity Assoc. of America et al. v. Criimi Mae Servs. Ltd. P'ship*, 2007 WL 7753901, 2007 U.S. Dist. LEXIS 28279 (S.D.N.Y. Mar. 20, 2007); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531 (Del.2011). Defendant also cites *Hill v. Citibank Corporation.*, 312 F.Supp.2d 464, 473–74 (S.D.N.Y., 2004) in support of this proposition, but this case is distinguishable in that the plaintiff was bringing an Equal Employment Opportunity Commission charge, which has statutory preconditions to filing a Title VII claim. TILA imposes no such statutory preconditions, and therefore Plaintiff was not required to aver that conditions precedent had been performed or occurred before bringing suit under the statute.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is denied. The Clerk of the Court is directed to remove the motion at Docket No. 8 from the Court's list of pending motions.