Thomas **TREVATHAN**, Plaintiff,

v.

**SELECT PORTFOLIO SERVICING, INC., Assurant, Inc., and American Security Insurance Company**, Defendants.

CASE NO. 15–61175–CIV–DIMITROULEAS/SNOW

United States District Court, S.D. Florida.

Signed 11/06/2015

John Joseph Uustal, Michael Aaron Hersh, Cristina M. Pierson, Jordan Mat-thew Lewis, Kelley Uustal, PLC, Ft. Lauderdale, FL, for Plaintiff.

David S. Kantrowitz, David Rosenberg, Goodwin Procter, LLP, Boston, MA, Jonathan R. Rosenn, Jan Timothy Williams, Lapin & Leichtling, LLP, Coral Gables, FL, Farrokh Jhabvala, Franklin G. Burt, Landon King Clayman, Farrokh Jhabvala, Franklin G. Burt, Landon King Clayman, Carlton Fields Jorden Burt, P.A., Miami, FL, for Defendants.

## OMNIBUS ORDER ON MOTIONS TO DISMISS

WILLIAM P. DIMITROULEAS, United States District Judge

THIS CAUSE is before the Court on the Motion of Assurant, Inc. to Dismiss the Class Action Complaint With Prejudice [DE 11], the Motion of American Security Insurance Company to Dismiss the Class Action Complaint With Prejudice [DE 18], and Select Portfolio Servicing, Inc.'s Motion to Dismiss Class Action Complaint [DE 22] (the "Motions"). The Court has carefully considered the Motions, Plaintiff's Response [DE 28], the Replies [38, 39, 40], and is otherwise fully advised in the premises.

### I. Background

Plaintiff, on behalf of himself and all other persons similarly situated, commenced this action on June 2, 2015, against Defendants Select Portfolio Servicing, Inc. ("SPS"), Assurant, Inc. ("Assurant"), and American Security Insurance Company ("American" and, together with Assurant, the "Assurant Defendants"). SPS services and/or owns mortgage loans secured by real property, [DE 1 ¶ 2]. The terms of all standard mortgage loans require borrow-

ers to purchase and maintain property insurance coverage on the secured property as a condition to funding. [*Id.* ¶ 3]. Such standard mortgage terms typically permit the lender or servicer to "force place" insurance if a borrower fails to maintain adequate hazard, flood, or wind insurance coverage themselves. [*Id.* ¶ 4]. The gravamen of Plaintiff's Complaint is that SPS, in collaboration with the Assurant Defendants, charged inflated and unnecessary force place flood insurance policy premiums to borrowers whose loans it serviced or owned. [*Id.* ¶ 1]. Plaintiff obtained a mortgage loan, serviced by SPS, secured by real property located in a low-risk flood zone in Broward County, Florida in 2006. [*Id.* ¶ 47, 49]. On the open market, the premium for flood insurance coverage of $250,000 would cost about $414.00. [*Id.* ¶ 49]. From 2010–2014, SPS force placed insurance on his property, issued by American, as Plaintiff failed to provide acceptable proof of coverage. [*Id.* ¶¶ 48–54]. The insurance premium for the coverage of $250,000 ranged from $1,493.58 to $2,326.50 per year-long policy period. [*Id.*]. Plaintiff alleges that SPS and the Assurant Defendants failed to disclose to him that the premium included "unearned kick-backs to SPS and the cost of servicing SPS mortgage portfolios." [*Id.* ¶ 55].

Plaintiff brings six counts: Count I: Breach of Contract (against SPS); Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing (against SPS); Count III: Unjust Enrichment (against SPS); Count IV: Unjust Enrichment (against the Assurant Defendants); Count V: Violation of the Truth in Lending Act ("TILA") (against SPS); and Count VI: Tortious Interference with a Business Relation (against all Defendants).

## II. Standard of Review

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley,* 355 U.S. at 41, 78 S.Ct. 99). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550, 127 S.Ct. 1955 U.S. at n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

## III. Discussion

Each of the three Defendants has filed its own Motion to Dismiss. SPS argues

that the Complaint should be dismissed because: (1) Plaintiff does not allege compliance with the requirement that he provide SPS notice and an opportunity to cure; (2) Plaintiff's common law claims (Breach of Contract, Implied Covenant, Unjust Enrichment, and Tortious Interference) fail as a matter of law; (3) Plaintiff's TILA claim fails; and (4) the filed-rate doctrine bars Plaintiff's "excessive premium" claims. American argues that this action should be dismissed because: (1) the filed-rate doctrine bars Plaintiff's "excess premium" claims; (2) controlling authority bars Plaintiff's claims; and (3) Plaintiff has failed to exhaust administrative remedies under Florida law. American also specifically addresses the Unjust Enrichment and Tortious Interference claims, arguing that they are fatally infirm. Assurant argues that Plaintiff has sued the wrong party, in addition to asserting the same arguments advanced in American's Motion to Dismiss. As several of the parties' arguments overlap, and Plaintiff has filed a single Response to the Motions to Dismiss, the Court will address the Motions collectively, where applicable.[1]

## A. Filed-rate doctrine bars Plaintiff's inflated premiums claims

 Defendants argue that Plaintiff's claims based on "excessive premiums" must fail, because the premiums American charged were the exact amounts authorized by Florida insurance regulators. Under the filed-rate doctrine, a regulated entity is "forbid[den] ... to charge rates for its services other than those properly filed

with the appropriate federal regulatory authority." *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1315 (11th Cir.2004) (quoting *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981)). The two principles underlying the doctrine are nondiscrimination and nonjusticiability. *Id.* at 1316. Under the nondiscrimination principle, the doctrine bars any claim that would allow an award of damages to effectively change the rate paid by that plaintiff to one below the filed rate paid by other customers. *Id.* Under the nondiscrimination principle, a claim is barred if an award of damages to the plaintiff would result in judicial reasonableness of the rate even if the claim does not directly attack the filed rate. *Id.* at 1317. In support of this argument, Defendant American attached to its Motion to Dismiss the Declaration of Rebecca H. Voyles, Manager, Product Compliance State Filings, for American, attaching thereto three exhibits. [DE 18–1, Ex. 1, A–C]. Exhibit A shows the initial approved premium rates in Florida for the Flood Program; Exhibit B shows premium rates in Florida for the Flood Program as of January 1, 1992; Exhibit C shows the filed and approved rates governing LPI policies issued in Florida under American's Flood Program from 1997 to the present. [DE 18–1, Ex. 1 ¶¶ 5–7, Ex. A–C]. The Court has taken judicial notice of these documents.[2] *See Chinn v. PNC Bank, N.A.*, 451 Fed.Appx. 859, 860 n. 1 (11th Cir.2012) ("A district court may take judicial notice of facts capable of accurate and ready determination by using sources whose accuracy cannot reasonably be

---

1. Ultimately, the Court did not need to reach every argument asserted. The Court notes that Defendants are free to raise any argument again, at a procedurally appropriate time, that was not reached by the Court.

2. While Plaintiff argues that the Court cannot consider the documents due to their relevance to a jurisdictional defense, the Court is not noticing them on that basis.

questioned, including public records"); *see also Armour v. Transamerica Life Ins. Co.*, No. CIV.A. 11–2034–KHV, 2012 WL 234032, at *5 (D.Kan. Jan. 25, 2012) (taking judicial notice of rates filed and correspondence with Insurance Department).

■ Plaintiff argues that it is not the rate itself, but rather the "kickback" present in the inflated rate and the Defendants' alleged "collusion and self-dealing" that is at issue. Defendants respond that the purported distinction is meaningless. Additionally, Plaintiff argues that SPS can't assert the filed-rate doctrine because it is not an insurer subject to that regulatory regime. Based on *Rothstien*, a recent Second Circuit decision, the Court finds that both of Plaintiff's arguments are unavailing.[3] In *Rothstien*, decided on July 22, 2015, the plaintiff alleged that, while he was charged the "filed rate," the loan servicer itself paid a lower rate to the insurer, benefitting from secret "rebates" and "kickbacks." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 259 (2d Cir.2015). The Second Circuit held that the filed-rate doctrine applied regardless, even though an intermediary had passed along the rate. *Id.* at 264. The Second Circuit explained that to hold otherwise would violate the nondiscrimination and nonjusticiability principles that the filed-rate doctrine seeks to promote. *Id.* at 262–63.[4] As in *Rothstein*, the Plaintiff in this action was charged by the servicer for the insurance at the rate filed with regulators. *Id.* at 262, 265. The *Rothstein* court was consid-

ering only the claims against the insurer and the insurer's affiliate, as Plaintiff's claims against the servicer had already settled. *Id.* at 261. The Court extends *Rothstein*'s reasoning to the servicer, as failing to do so would contravene the purposes of the filed-rate doctrine. Moreover, the case cited by Plaintiff for the propositions that SPS is not an insurer subject to the relevant regulatory regime and that Plaintiff is not the ratepayer relied on the Southern District of New York decision reversed by the Second Circuit in *Rothstien*. *Jackson v. U.S. Bank, N.A.*, 44 F.Supp.3d 1210, 1217 (S.D.Fla.2014). The Court finds that all of Plaintiff's claims arising from inflated rates, as to each of the three Defendants, should be dismissed with prejudice.

## B. *Feaz* is fatal to Plaintiff's excessive coverage claims

■ Defendants rely heavily on *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1101 (11th Cir.2014). In *Feaz*, the Eleventh Circuit clarified that the covenant in all home mortgage loans guaranteed by the Federal Housing Administration, stating that borrowers must insure their home "against loss by floods to the extend required by the Department of Housing and Urban Development ... makes the federally required flood-insurance amount the minimum, not the maximum the borrower must have." *Id.* at 1100–01 (internal quotation marks omitted). On that basis, the Eleventh Circuit affirmed the Southern District of Alabama court's dismissal of the

3. Plaintiff cites a number of similar district court cases, in which the court held that the filed-rate doctrine was inapplicable. *See, e.g., Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11–CV–81373–DMM, 2012 WL 2003337, at *3 (S.D.Fla. June 4, 2012). Even so, the Eleventh Circuit has not spoken to this issue, and this Court agrees with the logic and con-

clusions of the subsequently-issued *Rothstien* appellate decision.

4. The nondiscrimination problem is not resolved by Plaintiff bringing suit on behalf of a putative class. *Rothstein*, 794 F.3d at 263.

complaint, arising from the defendant bank's requirement that she have more flood insurance than the amount set by federal law, for failure to state a claim. *Id.* The Eleventh Circuit explained that lenders have a legitimate interest in obtaining greater coverage then just for the outstanding balance of the loan. *Id.* at 1106–08. Defendants argue that *Feaz* is fatal to Plaintiff's claims based on the inclusion of a "kickback" and that the flood coverage is "over and above the note holder's security interest in the property."

Plaintiff argues that the instant case differs from *Feaz*. First, Plaintiff argues that while in *Feaz*, the Court was applying Alabama law, in the instant case, Florida law is applicable. The Eleventh Circuit in *Feaz* explained that, in part because there is no general fiduciary duty owed by a mortgage lender to a borrower under Alabama law, Feaz's breach of fiduciary duty claim failed. In contrast, Plaintiff cites to *Hamilton v. Suntrust Mortgage Inc.*, 6 F.Supp.3d 1300, 1308 (S.D.Fla.2014) for the proposition that there is such a general fiduciary duty under Florida law, and that it is owed in this case. In *Hamilton*, the court explained that *Feaz* did not compel dismissal because the Florida implied covenant of good faith may have been breached by the defendants' alleged bad faith agreement "to force-place excessive insurance on Plaintiffs' properties in exchange for receiving a portion of the artificially-inflated premiums as unearned kickbacks." *Id.* at 1311.

Defendants argue that *Hamilton* has no bearing on Plaintiff's "excessive coverage"

claims that force-place insurance was procured over and above the "over and above the note holder's security interest in the property." *See* [DE 1 ¶ 11]. In *Hamilton*, the court explained that gravamen of plaintiff's claims was that the bank and insurer defendants had entered into exclusive agreements to force-place excessive insurance on plaintiffs' properties with inflated premiums that included unearned "kickbacks." *Hamilton*, 6 F.Supp.3d at 1311. As this Court has already explained, such inflated premium claims are barred by the filed-rate doctrine. In any event, as the Feaz court noted, "simply calling a commission a kickback doesn't make it one. The defining characteristic of a kickback is divided loyalties. But [the lender] was not acting on behalf of [the borrower] or representing her interests. The loan agreement makes it clear that the insurance requirement is for *the lender's* protection." *Feaz*, 745 F.3d at 1111.[5] The Court agrees that Feaz controls as to Plaintiff's claims based on coverage for a greater amount than the noteholder's security interest in the property. Thus, the Court finds that Plaintiff's claims that there was excessive flood insurance coverage fail under *Feaz*.

Only Count IV, for Unjust Enrichment, and Count VI, for Tortious Interference with a Business Relation, are asserted against the Assurant Defendants. The unjust enrichment claim is predicated solely upon excessive premiums that included kickbacks. The tortious interference with a business relation claim alleges only against the Assurant Defendants that they offered kickbacks to entice SPS to utilize

---

**5.** The Note in the instant action cautions Plaintiff that "[i]f Borrower fails to maintain any of the coverages above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense ... Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained." [DE 1 at 36].

their services, resulting in additional debt arising from inflated force placed insurance premiums. Thus, as both of the claims against the Assurant Defendants fall within the purview of excessive insurance coverage or inflated premiums, all claims against the Assurant Defendants are dismissed.

### C. Plaintiff fails to allege compliance with the requirement that he provide SPS with notice and an opportunity to cure

SPS argues that Plaintiff's Complaint should be dismissed from the outset because Plaintiff did not allege compliance with his Mortgage's notice and cure provision. The Court agrees.

The Mortgage Agreement states:

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or a member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[DE 1 at 42].

■■■■ As SPS notes, this Court recently considered an identical provision in *Hill v. Nationstar Mortgage LLC*, No. 15–

60106–CIV, 2015 WL 4478061, at *2 (S.D.Fla. July 2, 2015). In that case, this Court dismissed all of Plaintiffs claims [6] as Plaintiff has failed to allege requisite notice. *Id.*, at *3. As in *Hill*, the Court now must "determine whether the notice and cure provision bars this action, the Court must decide if the plaintiff is alleging that the defendant breached any provision of, or any duty owed by reason of the mortgage." *Id.*, at *3 (internal quotation marks omitted). The Court finds that Plaintiff is making such allegations. Substantively, each of Plaintiff's claims against SPS fall within this provision. The Breach of Contract claim is explicitly premised on the "mortgage agreement[ ]," and the Breach of Implied Covenant of Good Faith and Fair Dealing claim alleges that it arises from the covenant of good faith and fair dealing that is "implied in every contract." [DE 1 ¶¶ 69–71, 77]. The Court notes that while the allegations do not specifically refer to this provision of the Mortgage Agreement, the Mortgage Agreement contains the same provision as that in *Hill*, specifying that "[i]f (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument ... then Lender may do and pay for whatever is *reasonable or appropriate* to protect Lender's interest in the Property and rights under this Security Instrument ..." [DE 1–1 at 37]. As for the remaining claims, the Court agrees with SPS that they are based on purported violations of the "discretion with respect to insurance requirements" afforded by the Mortgage Agreement. [DE 1 ¶ 36]. The Unjust Enrichment count and the Tortious Interference with a Business Relation claim are both directly related to SPS's

---

**6.** Some of the causes of action in *Hill* overlap with those in the instant action, including unjust enrichment and breach of contract (including breach of implied covenant of good faith and fair dealing). *Hill*, 2015 WL 4778061, at *2.

procurement of force place insurance under the terms of the Mortgage Agreement. The only claim that does not require notice is Plaintiff's TILA claim, as it implicates a statutory duty not arising from the statute. *See St. Breux v. U.S. Bank, Nat. Ass'n*, 919 F.Supp.2d 1371, 1376 (S.D.Fla.2013).

Plaintiff contends that he was not required to provide notice to SPS because SPS is a loan servicer, not the "Lender" as specified in the contract provision. The Court rejects this argument. First, as SPS notes, the Complaint does not make such a clear distinction, as Plaintiff repeatedly refers to SPS as a servicer or lender for the relevant loans, including Plaintiff's. *See* [DE 1 ¶¶ 2, 14, 47] ("SPS owns/and or services mortgage loans"), ("SPS has its mortgage loans or loan servicing portfolio") ("[a]t all times relevant to the allegations herein, Trevathan's mortgage loan was owned or serviced by SPS."). Second, in *Hill*, this Court applied the notice provision to the loan servicer. *Hill*, 2015 WL 4478061, at *3. This Court explained in *Hill* that the loan servicer had acquired the contract rights and obligation of the Lender relating to the servicing of the loan. *Id.* Here, Plaintiff has alleged that "standard mortgage loan provisions generally permit the lender or servicer to 'force place' insurance" and that "[t]he mortgage agreements executed by Plaintiff and all similarly situated class members are uniform mortgage forms that contain substantially similar provision regarding force placed insurance requirements, including flood insurance requirements, and its placement by SPS." [DE 1 ¶¶ 4, 69]. Accordingly, as in *Hill*, Plaintiff's failure to allege notice and opportunity to cure requires dismissal without prejudice of Counts I, II, III, and VI against SPS.

**D. Plaintiff has failed to state a claim under TILA**

 TILA requires disclosure of a loan's "finance charge" before the "con-

summation of the [loan] transaction." 12 C.F.R. § 226.17(b); 12 C.F.R. § 226.18. SPS argues that TILA does not require disclosure of property insurance costs, as the premiums are not appropriately characterized as "finance charges." Excluded from the "finance charge," as SPS argues, are "property insurance premiums" when "[t]he insurance coverage may be obtained from a person of the consumer's choice and this fact is disclosed." 12 C.F.R. § 226.4. That is the case here, as the Mortgage Agreement states that the "insurance carrier providing the insurance shall be chosen by Borrower ..." [DE 1 at 35]. Thus, the Court agrees with SPS that it was not required to disclosure property insurance costs at the consummation of the loan transaction (in this case, at closing).

Plaintiff has alleged that, after the consummation of the loan transaction, new disclosures were required when SPS added charges for force place flood insurance. [DE 1 ¶ 109]. The Official Commentary to TILA, however, speaks directly to this issue, explaining that "when the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it, such a change does not make the original disclosures inaccurate." 12 C.F.R. § Pt. 226, Supp. I, Subpt. B; *see also Montoya v. PNC Bank, N.A.*, No. 14–20474–CIV, 2014 WL 4248208, at *16 (S.D.Fla. Aug. 27, 2014) (explaining that because defendant was authorized by the mortgage contract to purchase force place insurance and charge plaintiffs for it, such charges do not constitute finance charges requiring disclosure).

**IV. Conclusion**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motions [DE 11, 18, 22] are hereby **GRANTED**;

2. The Complaint is hereby **DISMISSED**;

3. Plaintiff's "inflated premium" claims are **DISMISSED with prejudice** on the basis of the filed-rate doctrine;

4. The remaining claims are **DISMISSED without prejudice**;

5. Plaintiff may file an Amended Complaint on or before **December 3, 2015.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of November 2015.